**CASE NO.**

---

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

---

**TAYLEUR RAYE PICKUP,** *et al.,*

**Plaintiffs,**

**v.**

**THE DISTRICT COURT OF NOWATA COUNTY OKLAHOMA,** *et al.,*

**Defendants.**

---

**DEFENDANTS KEVIN BURCHANAN, KENNY WRIGHT,
MATT BALLARD AND STEVE KUNZWEILER'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

---

**JACQUELINE R. ZAMARRIPA, OBA#33647**
**Assistant Attorney General**
**RANDALL J. YATES, OBA#30304**
**Assistant Solicitor General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921 * (405) 522.4448 * Facsimile: (405) 521-4518**
*Attorneys for Kevin Buchanan, Kenny Wright, Matt Ballard, and Steven Kunzweiler*

**August 27, 2020**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .......................................................................................iii

DEFENDANTS' MOTION TO DISMISS ..............................................................1

INTRODUCTION .......................................................................................................1

STANDARD OF REVIEW ...............................................................................................

ARGUMENT AND AUTHORITIES.......................................................................3

PROPOSITION I:

    PLAINTIFFS' REQUEST FOR REVERSAL OF THEIR STATE COURT JUDGMENT AND SENTENCE IS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE .............................................................................3

PROPOSITION II:

    THE DISTRICT ATTORNEYS ARE IMMUNE FROM PLAINTIFF'S § 1983 CLAIM .......................................................................................................5

PROPOSITION III:

    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION.......................................................................................8

    A.  Plaintiffs fail to sufficiently plead a state law claim for "money had and received" and they come to the Court with unclean hands........................................................8

    B.  Plaintiffs' claim is barred by equitable defenses .........................................................12

    C.  The scope of Oklahoma's Uniform Post-Conviction Act should be heard in state court.......................................................................................................14

    D.  The application of Oklahoma's Governmental Tort Claims Act and Fee Protest Statute should be heard in state court.......................................................................15

**PROPOSITION IV:**

**THE COURT SHOULD ABSTAIN FROM HEARING PLAINTIFFS'
REQUEST FOR DECLARATORY RELIEF**............................................................18

**CONCLUSION** ...........................................................................................................20

**CERTIFICATE OF SERVICE** ..................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Aguero v. Aguero,*
976 P.2d 1088 (Okla. Civ. App. 1999) ........................................................................12

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ...................................................................................................9

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................................................9

*Brandon v. Holt,*
469 U.S. 464 (1985) ......................................................................................................5

*Buchwald v. Univ. of New Mexico School of Med.,*
159 F.3d 487 (10th Cir. 1998) ......................................................................................7

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993) ......................................................................................................6

*Burns v. Reed,*
500 U.S. 478 (1991) ......................................................................................................6

*Campbell v. City of Spencer,*
682 F.3d 1278 (10th Cir. 2012) ....................................................................................4

*Continental Oil Co. v. Rapp,*
301 P.2d 198 (Okla. 1956) ..........................................................................................10

*Cowan v. Hunter,*
762 F.App'x 521 (10th Cir. 2019) ................................................................................4

*D.C. Court of Appeals v. Feldman,*
460 U.S. 462 (1983) ........................................................................................2, 3, 4, 14

*Duncan v. Anderson,*
250 P. 1018 (Okla. 1926) ...........................................................................................8, 9

*Dutton v. City of Midwest City,*
353 P.3d 532 (Okla. 2015) ..........................................................................................14

*Edelman v. Jordan*,
415 U.S. 651 (1974) ............................................................................................ 5

*Ehlers v. Vinal*,
382 F.2d 58 (8th Cir. 1967) .............................................................................. 10

*Erlandson v. Northglenn Mun. Court*,
528 F.3d 785 (10th Cir. 2008) ............................................................................ 4

*Erickson v. Pawnee County Bd. of County Comm'rs*,
263 F.3d 1151 (10th Cir. 2001) .......................................................................... 5

*Ex parte Young*,
209 U.S. 123 (1908) ......................................................................................... 5, 7

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) ............................................................................................ 4

*Glaser v. City & Cty. Of Denver, Colo.*,
557 F.App'x 689 (10th Cir. 2014) ...................................................................... 6

*Hall v. Bellmon*,
935 F.2d 1106 (10th Cir. 1991) .......................................................................... 9

*Heck v. Humphrey*,
512 U.S. 477 (1994) ....................................................................................... 2, 15

*Hubbart v. Knapp*,
379 F.3d 773 (9th Cir. 2004) .............................................................................. 7

*Imbler v. Pachtman*,
424 U.S. 409 (1976) ............................................................................................ 6

*Johns v. Stewart*,
57 F.3d 1544 (10th Cir. 1995) ............................................................................ 7

*Jones v. Attorney Gen. of California*,
280 F.App'x 646 (9th Cir. 2008) ........................................................................ 7

*Joseph A. ex rel., Corrine Wolfe v. Ingram*,
275 F.3d 1257 (10th Cir. 2002) ........................................................................ 18

*Lampton Welding Supply Co, Inc. v. Stobaugh*,
2012 WL 5878875 (N.D. Okla. Nov. 21, 2012) .............................................. 10

*Lawrence v. Kuenhold,*
271 F.App'x 763 (10th Cir. 2008)..................................................................................7

*Liberty National Bank of Weatherford v. Lewis,*
44 P.2d 127 (Okla. 1935)..............................................................................................11

*Louisiana Realty Co. v. City of McAlester,*
108 P. 391 (Okla. 1910) ................................................................................................13

*Mann v. Boatright,*
477 F.3d 1140 (10th Cir. 2007) ......................................................................................4

*Meadows v. Oklahoma City Mun. Court,*
247 F.App'x 116 (10th Cir. 2007)...................................................................................4

*McGirt v. Oklahoma,*
140 S.Ct. 2452 (2020) ..................................................................................1, 13, 18, 19

*New England Mut. Life Ins. Co. v. Grant,*
56 F.Supp. 192 (D. Mass 1944) ...................................................................................11

*Nielander v. Bd. of County Comm'rs,*
582 F.3d 1155 (10th Cir. 2009) ......................................................................................6

*Pennhurst State Sch. & Hosp. v. Halderman,*
464 U.S. 89 (1984) .........................................................................................................5

*Precision Instrument Mfg. Co. Auto. Maint. Mach. Co.,*
324 U.S. 806 (1945) .....................................................................................................12

*Robbins v. Oklahoma,*
519 F.3d 1242 (10th Cir. 2008) ......................................................................................9

*Rooker v. Fid. Trust Co.,*
262 U.S. 41 (1923) ...........................................................................................2, 3, 4, 14

*Sarber v. Harris,*
368 P.2d 93 (Okla. 1962) .............................................................................................12

*Sholer v. State ex rel., Dep't of Pub. Safety,*
945 P.2d 469 (Okla. 1995)....................................................................... 11, 12, 16, 15, 17

*Souiri v. Oklahoma,*
2017 WL 2260676 (N.D. Okla. May 23, 2017)..............................................................5

*Sullivan v. Scoular Grain Co. of Utah,*
930 F.2d 798 (10th Cir. 1991) ...........................................................................15, 16

*Tomek v. Apple, Inc.,*
2012 WL 2857035 (E.D. Cal. 2012) ......................................................................10

*United States v. California,*
507 U.S. 746 (1993) ..............................................................................................11

*Will v. Mich. Dep't of State Police,*
491 U.S. 58 (1989) ..................................................................................................5

## STATUTES

OKLA. STAT. tit. 20 § 40 ........................................................................................14

OKLA. STAT. tit. 22 § 991(7) ..................................................................................10

OKLA. STAT. tit. 22 § 991(8) ..................................................................................10

OKLA. STAT. tit. 22 § 991a .............................................................................6, 10, 13

OKLA. STAT. tit. 22 § 991a(A) ................................................................................10

OKLA. STAT. tit. 22 § 991c(7) .................................................................................10

OKLA. STAT. tit. 22 § 1080 .....................................................................................14

OKLA. STAT. tit. 22 § 1080(b) .................................................................................14

OKLA. STAT. tit. 22 § 1081 .....................................................................................14

OKLA. STAT. tit. 22 § 1087 .....................................................................................14

OKLA. STAT. tit. 28 § 153 .......................................................................................13

OKLA. STAT. tit. 28 § 1355.14 .................................................................................13

OKLA. STAT. tit. 62 § 206(A) .............................................................................16, 17

18 U.S.C. § 1151(a)................................................................................................19

18 U.S.C. § 1152 ...................................................................................................19

28 U.S.C. § 1257 .....................................................................................................3

28 U.S.C. § 1367(c) .................................................................................................8

42 U.S.C. § 1983 ...............................................................................1, 2, 3, 5, 7, 15

## RULES

Fed. R. Civ. P. 12(b)(1) ...........................................................................................1

Fed. R. Civ. P. 12(b)(3) ...........................................................................................1

## OTHER

66 Am. Jr. Restitution and Implied Contracts, § 153 ..........................................8, 9

Laws 2014, HB 2405, c. 77, § 1, emerg. eff. April 21, 2014...............................16

William David Evans, *Essays on the Action for Money Had and Received* (1802) ..............................8

Wright, Miller & Cooper, 18B Fed. Prac. & Proc. § 4469.1 ................................3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

TAYLEUR RAYE PICKUP, *et al.*

                       Plaintiffs,

v.

THE DISTRICT COURT OF NOWATA
COUNTY, OKLAHOMA, *et al.*

                       Defendants.

**Case No. 20-cv-346-JED-FHM**

## DEFENDANTS KEVIN BUCHANAN, KENNY WRIGHT,
## MATT BALLARD AND STEVE KUNZWEILER'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendants Kevin Buchanan, Kenny Wright, Matt Ballard, and Steve Kunzweiler, in their official capacities as elected District Attorneys, under Fed. R. Civ. P. 12(b)(1), (3), and (6), move this Court to dismiss Plaintiffs' claims against them.

## INTRODUCTION

This case was prompted by the Supreme Court's recent decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020), wherein the Creek reservation was found in existence and therefore the State of Oklahoma lacked jurisdiction to prosecute a Native American for crimes he committed on Muskogee (Creek) land. Plaintiffs here similarly challenge their convictions on the ground that the State lacked jurisdiction due to their status as Native Americans and that the land where they committed their offense is reserved for the Cherokee Nation. Plaintiffs sue under 42 U.S.C. § 1983 while their convictions for misdemeanors and traffic offenses remain intact. They seek to have this Court collaterally declare their state convictions void.

Based on that declaration, Plaintiffs request—under a state law claim for money had and received—the return of any money paid resulting from their state convictions.

This case should be dismissed for several reasons. For starters, Plaintiffs' § 1983 claim itself, which alleges nothing more than lack of state jurisdiction, is a state law claim that cannot be transformed to a federal one by means of a due process label. Even so, under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to entertain Plaintiffs' federal law claim declaring their state judgment and sentence void. And the district attorneys enjoy absolute Eleventh Amendment sovereign immunity against Plaintiffs' federal claims for relief.

With dismissal of Plaintiffs' § 1983 claim, the values of judicial economy, federalism, fairness, convenience, and comity weigh in favor of this Court declining to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Much like the federal *Heck* doctrine bars collateral attacks on criminal confinement in a § 1983 action, Oklahoma law suggests that plaintiffs are precluded from bringing collateral attacks on state convictions outside the Oklahoma Uniform Post-Conviction Act, even when the plaintiff only seeks monetary relief. Beyond that, Plaintiffs have failed to plead enough facts to even establish their state law claim.

There are also important state law questions regarding the notice requirements of the State's governmental tort claim act and fee protests statutes. These important issues of state law should be heard in Oklahoma courts. Furthermore, the State should decide how to apply equitable defenses to these state law claims, particularly when plaintiffs' own transgressions led to the claim they now assert and when doing so might avert harm to law-abiding Oklahomans by preventing an inequitable raid on public funds.

Finally, the *Younger* abstention doctrine requires this Court to refrain from interfering with an ongoing state judicial proceeding that implicates important state interests and affords an adequate opportunity to decide the federal questions. The Oklahoma Court of Criminal Appeals has remanded several cases ordering Oklahoma district courts to hold evidentiary hearings within the next sixty (60) days—and they are starting now—to determine the very land status issue presented here for the purpose of reaching Plaintiffs' jurisdiction question. Moreover, the Cherokee Nation has asked to assist the district courts' determinations in every matter where this issue was raised. This no doubt affords an adequate opportunity to hear the question and this Court should defer to the state's district courts.

For these reasons, the case against the district attorneys should be dismissed.

## ARGUMENT AND AUTHORITY

**PROPOSITION I: PLAINTIFFS' REQUEST FOR REVERSAL OF THEIR STATE COURT JUDGMENT AND SENTENCE IS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE**

Plaintiffs' request for this Court to declare that their criminal convictions are void triggers the *Rooker-Feldman* doctrine and, therefore, this Court lacks subject matter jurisdiction over Plaintiffs' § 1983 claim.

The *Rooker-Feldman* doctrine arose out of 28 U.S.C. § 1257 and provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments. *See Rooker v. Fid. Trust Co.,* 263 U.S. 41 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The doctrine works as a jurisdictional limit on federal courts. *See* Wright, Miller & Cooper, 18B Fed. Prac. & Proc. § 4469.1 ("The general statutes that establish original federal subject-matter jurisdiction in the district courts do not extend to an 'appeal' from a state-court judgment.").

It "prevents the lower *federal* courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments." *Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 788 (10th Cir. 2008); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In other words, "an element of [Plaintiffs'] claim must be that the state court wrongfully entered its judgment." *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012).

The proper remedy for claims brought in contravention of *Rooker-Feldman* is dismissal for lack of jurisdiction. *Mann v. Boatright,* 477 F.3d 1140, 1145-46 (10th Cir. 2007). In *Meadows*, the Tenth Circuit dismissed a claim "seek[ing], in essence, to overturn a conviction from the Oklahoma City Municipal Court system" because it "amount[ed] … to an appeal from, or collateral attack on, the state court's judgment, and it is not allowed under the *Rooker-Feldman* doctrine." *Meadows v. Oklahoma City Mun. Court*, 247 F. App'x 116, 118 (10th Cir. 2007). Similarly, in *Erlandson*, the Tenth Circuit held that the *Rooker-Feldman* doctrine bars a request for reversal of a municipal conviction. 528 F.3d at 788-89.

Here, Plaintiffs asked this Court to declare "any conviction or deferred adjudication against the members of the Class by the State of Oklahoma or any political subdivision thereof to be void." [Doc. 1, ¶¶ 90-95], prayer for relief. As the Tenth Circuit has expressly stated, "claims for vacatur of the state-court judgment trigger the *Rooker-Feldman* doctrine." *Cowan v. Hunter*, 762 F. App'x 521, 523 (10th Cir. 2019); *see also Erlandson*, 528 F.3d at 790 (holding that the federal court lacked subject matter jurisdiction when the plaintiff "specifically asked the district court to 'overturn' his municipal court conviction."). Indeed, Plaintiffs' challenge to the decisions of the state criminal courts lie only with the appropriate state appellate court and,

thereafter, the United States Supreme Court, as discussed below in Proposition III(C). For this reason, this claim should be dismissed.

## PROPOSITION II: THE DISTRICT ATTORNEYS ARE IMMUNE FROM PLAINTIFFS' § 1983 CLAIM

Plaintiffs' are not entitled to monetary relief against the district attorneys in their official capacities, as the Eleventh Amendment protects the district attorneys from suit in federal court for the relief Plaintiffs seek. Nor are Plaintiffs entitled under *Ex Parte Young* to the declaratory relief they seek.

District attorneys are arms of the state and entitled to Eleventh Amendment immunity from actions against them in his or her official capacity. *See Souiri v. Oklahoma*, No. 17-CV-257-JED, 2017 WL 2260676, at *3 (N.D. Okla. May 23, 2017) (quoting *Erickson v. Pawnee County Bd. of County Comm'rs,* 263 F.3d 1151, 1153-54 (10th Cir. 2001)). While "state officials are persons," a suit against an official "is no different from a suit against the state itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). With the state as the real party in interest when an official has been subjected to suit, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), a judgment in a § 1983 suit against an official "in his official capacity" imposes liability against the entity that he represents, *Brandon v. Holt*, 469 U.S. 464, 472 (1985). Thus, the district attorneys are not "persons" subject to suit under 42 U.S.C. § 1983 and there is no basis in the Complaint which would entitle Plaintiffs to monetary relief against them under federal law. *See Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (the Eleventh Amendment bar suits against state agencies "regardless of the nature of the relief sought.").

To determine whether a state prosecutor is shielded from liability under § 1983 by absolute immunity, courts apply a "functional approach" and focus on "the nature of the

function performed, not the identity of the actor who performed it." *Glaser v. City & Cty. of Denver, Colo.*, 557 F. App'x 689, 704 (10th Cir. 2014) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). The Tenth Circuit has outlined broad categories that entitle prosecutors to absolute immunity, including "their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluations of evidence, their determinations of whether probable cause, and their determination of what information to show the court." *Nielander v. Bd. of County Comm'rs,* 582 F.3d 1155, 1164 (10th Cir. 2009).

Here, Plaintiffs' allegations against the district attorneys fall within the category of prosecutorial conduct outlined by the Tenth Circuit. *Cf.* [Doc. 1, ¶¶ 9-10, 12, 14, 91]. Plaintiffs offer no allegations of extra-official behavior and the threadbare assertions are insufficient to strip these defendants of absolute immunity. Because the allegations relate to initiating and pursuing criminal prosecution and presenting the state's case at trial, the district attorneys are absolutely immune from liability and this claim should be dismissed.

In any event, prosecutors, like judges, certainly enjoy absolute immunity during the "judicial phase of the criminal process." *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Burns v. Reed*, 500 U.S. 478, 492 (1991) (explaining that absolute immunity applies to prosecutors because the "substantial likelihood of vexatious litigation … might have an untoward effect on the independence of the prosecutor."). Indeed, prosecutors have no authority to levy criminal penalties or the associated administrative costs and fees. While the prosecutor may make recommendations, such judgments are rendered by the sentencing court. *See* OKLA. STAT. tit. 22, § 991a.

Furthermore, Plaintiffs are also not entitled to the declaratory relief they seek. The Supreme Court has recognized an exception to the Eleventh Amendment when a plaintiff seeks prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). However, this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Buchwald v. Univ. of New Mexico School of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations omitted). Notably, "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Lawrence v. Kuenhold*, 271 F. App'x 763, *3 (10th Cir. Mar. 27, 2008). Because Plaintiffs seek judgment declaring past actions by the defendants were unlawful and without jurisdiction, their claims are barred by the Eleventh Amendment. *See Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) ("The Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past.") (citations and quotations omitted).

That said, the claim that is styled as a due process § 1983 claim does not raise a federal question at all. The question is purely one of state jurisdiction. A lack of jurisdiction does not necessarily equal a lack of Fourteenth Amendment due process. The Ninth Circuit, for example, has said "[w]hether the court lacked jurisdiction is a matter of state law that has been resolved … in state court. This court is bound by a state court's interpretation of state law. Although [plaintiff] contends that his due process rights were violated by the alleged lack of jurisdiction, he cannot 'transform a state-law issue into a federal one merely by asserting a violation of due process.'" *Jones v. Attorney Gen. of California*, 280 F. App'x 646, 647 (9th Cir. 2008) (quoting *Hubbart v. Knapp*, 379 F.3d 773, 779-80 (9th Cir. 2004)). This Court should find

~ 7 ~

the same. Here, Plaintiffs allege a due process violation based solely on lack of state jurisdiction. [Doc. 1, ¶ 92]. Such labeling does not transform this state law claim to a federal one. Indeed, Plaintiffs make no real allegations that they were deprived of the process that they were due, only that it was done in the wrong forum. This claim should be dismissed.

## PROPOSITION III: THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION

As to the remaining state law claim for money had and received, this Court should decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). As explained herein, the Court should dismiss all the claims over which it has original jurisdiction. Furthermore, "the [state law] claim substantially predominates over the claim … over which the district court has original jurisdiction," and the claim raises novel or complex issues of state law, particularly in regard to the Oklahoma Uniform Post-Conviction Relief Act, the Oklahoma Governmental Tort Claims Act ("GTCA"), and Oklahoma's protest fee statute. But, to begin with, Plaintiffs fail to establish their claim with enough alleged facts and come to the court with unclean hands seeking a remedy that will harm the public.

### A. Plaintiffs fail to sufficiently plead a state law claim for "money had and received" and they come to the Court with unclean hands.

Plaintiffs have failed to state a claim for money had and received against the district attorneys. "Money had and received" essentially means "money held" when "in equity and good conscience [the holder] is not entitled to hold it." *Duncan v. Anderson*, 250 P. 1018, 1019 (Okla. 1926); *see also* WILLIAM DAVID EVANS, *Essays on the Action for Money Had and Received* (1802). It is a claim at common law under the category of restitution but grounded in implied contract and governed by equitable principles. *See* 66 Am. Jur. 2d Restitution and Implied

Contracts, § 153. In this matter, Plaintiffs cannot establish a claim for money had and received, because there are no facts suggesting any defendant is holding a sum certain under an implied contract that in equity and good conscience the defendant should not retain. Moreover, Plaintiffs cannot recover under a theory governed by equitable principles because they come to the court with unclean hands.

The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face" not just conceivable. *Twombly*, 550 U.S. at 570. And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). The Complaint here falls short.

Under Oklahoma law, an action for money had and received will lie only against the actual "holder of the money"—that is, the party who actually holds the money "in his hands." *Duncan v. Anderson*, 250 P. 1018, 1019 (Okla. 1926). "It is immaterial by what means … the money came into [the holder's] hands" and "the fact that it was received from a third person will not affect his liability." *Id.* In *Duncan v. Anderson*, by a bank's mistake certain funds ended up in the hands of the wrong party. But the bank was not the holder of the funds at the time of the action. Therefore, the Oklahoma Supreme Court held that the claim of money had

and received did not lie against the bank. Rather, the action had to be against the actual holder of the funds. *Id.*

Here, Plaintiffs have failed to allege that the district attorneys are actually holding the money at issue. Nor could they. For example, Plaintiffs allege that two of the plaintiffs were ordered to pay $40 per month to the Mayes County District Attorney's Office—presumably for supervision fees under OKLA. STAT. tit. 22, § 991a. [Doc. 1, ¶¶ 61, 64]. But the district attorneys are not the actual holders of supervision fees as required under a money had and received claim—they are merely a third party pass-through acting in accordance with a judicial mandate. *See id.* at § 991c(7)-(8). While Oklahoma law authorizes the district attorney to collect supervision fees, "[a]ny fees collected by the district attorney" cannot be retained by the office but "shall be deposited in the General Revenue Fund of the State Treasury." *Id.* at §§ 991a(A), 991c(7).

Furthermore, this Court has acknowledged that, in an action for money had and received, "the Oklahoma Supreme Court [has] held that '[the] action will lie to recover a **sum certain**.'" *Lampton Welding Supply Co, Inc. v. Stobaugh*, No. 11-CV-319-TCK-TLW, 2012 WL 5878875, at *1 (N.D. Okla. Nov. 21, 2012) (quoting *Continental Oil Co. v. Rapp*, 301 P.2d 198, 199 (Okla. 1956)) (emphasis in original). The Eighth Circuit has also noted that in an action for "money had and received," a plaintiff must "show the **exact amount** the government is wrongfully holding." *Ehlers v. Vinal*, 382 F.2d 58, 66 (8th Cir. 1967) (emphasis added). And a federal court in California more recently dismissed a "money had and received claim" because the complaint failed to allege any "**concrete amount**" owed. *Tomek v. Apple, Inc.,* 2012 WL 2857035, at * 7 (E.D.Cal.2012) (emphasis added).

Plaintiffs have not alleged a concrete sum certain due as required to establish a money had and received claim. In a Massachusetts case, the court explained that "[i]n the case at bar, respondents … do not set forth any specific sum claimed to be due them. Instead, they admit an indebtedness out of the funds in question to the respondents … in an unknown amount … and merely claim any balance." *New England Mut. Life Ins. Co. v. Grant*, 56 F.Supp. 192, 193 (D. Mass. 1944). The court said, "if the exact amount due is not definitely known … the law is well established that an action will not lie for money had and received." *Id.* Thus, the claim was dismissed. As should be done here. Plaintiffs make vague claims for "all or at least a portion of the money," whatever it is, and even question "[h]ow much of the money … [Defendants] should be allowed to keep?" [Doc. 1, ¶¶ 77(b)-(c)]. Such indeterminate claims are insufficient to establish an action for money had and received. Nor is the fact that two of the plaintiffs were ordered to pay $40 per month in supervision fees without knowing the number of payments actually paid.

Moreover, "[w]ithout an implied contract, an action for money had and received will not lie against the State." *United States v. California*, 507 U.S. 746, 756 (1993); *see also Liberty National Bank of Weatherford v. Lewis*, 44 P.2d 127, 128 (Okla. 1935) (holding that an action for money had and received rests upon an implied contract). Plaintiffs here have not identified an implied contract between themselves and the district attorneys.

Plaintiffs mistakenly assert that their claim for money had and received is just like the one described in *Sholer v. State ex rel. Dep't of Pub. Safety*, 945 P.2d 469 (Okla. 1995). *See* [Doc. 1, ¶ 52]. But in *Sholer,* the exact amount of the driver's license reinstatement fee at issue was set in statute and plaintiffs identified the one agency—the Oklahoma Department of Public

Safety ("DPS")—that held the funds. Under these circumstances, the Oklahoma Supreme Court awarded the complaining party return of excess money paid to the agency based on a faulty reading of the statute and a miscalculation of the fee. *Id.* at 478. Here, Plaintiffs make vague, conclusory allegations against 48 defendants without any facts identifying the exact amount of funds due or if Defendants are holding the funds at all. Nor can Plaintiffs claim that their criminal convictions implied a contract. For that reason alone, their claim should be dismissed.

### B.  Plaintiffs' claim is barred by equitable defenses.

In any event, the equitable doctrine of unclean hands bars Plaintiffs' claim. In Oklahoma, "[an action for money had and received] is an action at law triable to a jury, [but] its determination is controlled by principles of equity." *Sarber v. Harris*, 368 P.2d 93, 95 (Okla. 1962). Thus, the "broad category" of "[e]quitable defenses" are available, "including the doctrine of unclean hands." *Aguero v. Aguero*, 976 P.2d 1088, 1093 n. 4 (Okla. Civ. App. 1999).

The U.S. Supreme Court has said that unclean hands "closes the doors of a court of equity to one tainted with inequitableness" directly related "to the matter in which he seeks relief" regardless of how "improper … the [defendant's] behavior." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945). In general, unclean hands can be invoked for "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct." *Id.* But "where a suit in equity concerns the public interest … [unclean hands] assumes even wider and more significant proportions." *Id.* Moreover, equity in general protects parties like district attorneys who have labored in the

public interest under a reasonable mistake of law—and equity's protections are most acute when all parties in the case have operated under the same mistake of law.

Common to all Plaintiffs is the commission of a criminal act. Membership in Plaintiffs' proposed class requires each to be prosecuted for "traffic offenses or misdemeanor offenses … within the boundaries of the Cherokee Reservation." [Doc. 1, ¶¶ 66]. No doubt the criminal act is the event that triggered this case and led to prosecution. Plaintiffs are hard pressed to say that they come to state court with clean hands when they would have had to violate the State's criminal and traffic laws to get there. This should be enough to invoke unclean hands on the entire class. Moreover, invoking unclean hands would avert an injury to the public, by stopping these offenders from taking an all-at-once dip from multiple public funds that go to roads, courts, schools, victim compensation, first responders, and other vital services. *See, e.g.*, OKLA. STAT. tit. 28 §§ 153, 1355.14, OKLA. STAT. tit. 22 § 991a.

In fact, as identified by the U.S. Supreme Court in *McGirt v. Oklahoma*, "procedural bars"—including those found in equity—"protect those who have reasonably labored under a mistaken understanding of the law." 140 S.Ct. at 2481. On top of that, when all parties to a transaction are operating under a mutual mistake of law, equity will not benefit one party to the detriment of the other party after the fact. *See, e.g., Louisiana Realty Co. v. City of McAlester*, 108 P. 391, 392 (Okla. 1910) (noting that to recover funds "they must have been paid through mistake of fact, and not of law."). Thus, in a claim governed by equitable principles, Plaintiffs cannot go back and claim benefit for acts they knew to be against the law, understood the consequences thereof at the time, and chose to do anyway.

Oklahoma courts should decide how to apply equitable defenses and procedural bars under these circumstances. For this reason, this Court should decline to hear Plaintiffs' state law claim.

### C.  The scope of Oklahoma's Uniform Post-Conviction Act should be heard in state court.

As a predicate to their civil action, Plaintiffs must obtain a declaration that their judgment and sentences are invalid—it is simply impossible to grant the relief they seek otherwise. Under *Rooker-Feldman*, such a declaration cannot happen here. Under Oklahoma law, the exclusive means to launch a collateral attack on a criminal conviction is in an action for post-conviction relief under the Oklahoma Criminal Procedure Code. *See* OKLA. STAT. tit. 22, §§ 1080-81, 1087.

The Uniform Post-Conviction Procedure Act, "encompasses and replaces all common law … methods of challenging a conviction or sentence" based on the claim "that the court was without jurisdiction to impose sentence." OKLA. STAT. tit. 22, § 1080(b). Such "[a] proceeding is commenced by filing a verified 'application for post-conviction relief' with … the court imposing judgment." *Id.* at § 1081. The Oklahoma Supreme Court has acknowledged that, through this Act, "the Legislature created a post-conviction remedy that supplanted the common-law writs and redefined what post-conviction claims may be made." *Dutton v. City of Midwest City*, 353 P.3d 532, 541 (Okla. 2015). In Oklahoma, "[t]he Court of Criminal Appeals [has] exclusive appellate jurisdiction … in all criminal cases appealed from the [district] courts," OKLA. STAT. tit. 20, § 40, including review of decisions on applications for post-conviction relief. *See* OKLA. STAT. tit. 22, § 1087. Thus, the predicate issue of the validity of a

~ 14 ~

criminal conviction must be determined by the sentencing court in the criminal case before a civil case of this sort can commence.

In *Heck v. Humphrey*, the U.S. Supreme Court articulated a logical sequence of criminal-before-civil in an analogous situation involving a prisoner's § 1983 civil action that was predicated upon issues belonging in habeas corpus. 512 U.S. 477, 487 (1994). The U.S. Supreme Court held that "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* This was true even though, as here, the relief requested was purely civil and there was no demand for release or reversal of conviction. *Id.* at 479.

Oklahoma state courts should decide whether state law demands a *Heck*-like favorable termination rule based on collateral attacks implicit in civil actions outside post-conviction relief. For this reason, this Court should decline supplemental jurisdiction over Plaintiffs' state law claim.

### D. The application of Oklahoma's Governmental Tort Claims Act and Fee Protest Statute should be heard in state court.

Plaintiffs' deficient pleading also raises serious state law concerns about the notice requirements in the GTCA and Oklahoma's fee protest statute. Plaintiffs' cite to *Sholer* does not suffice to show that their claim is not subject to the GTCA. *See* [Doc. 1, ¶ 52]. Even so, application of the GTCA or Oklahoma's fee protest statute to Plaintiffs' claim for money had and received requires this Court to conduct a less-than-surefooted analysis of state law in an area of particular importance to the State. *See Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798,

~ 15 ~

803 (10th Cir. 1991) ("Declining pendent jurisdiction is appropriate when the court needs a 'surerfooted' analysis of state law in an area of particular importance to a state."). For this reason alone, this Court should decline to hear Plaintiffs' state law claim as the notice requirements of the GTCA and protest fee statute in this matter raise a novel and complex issue of state law.

For example, the *Sholer* court held that the GTCA did not apply to plaintiffs' claim for money had and received, but that was based in part on the GTCA's narrow definition of "tort" at that time. *Sholer,* 945 P.2d at 472-73. Years after *Sholer,* the Legislature amended the GTCA and broadened the definition of "tort" to expand the scope of the State's sovereign immunity. *See* Laws 2014, HB 2405, c. 77, § 1, emerg. eff. April 21, 2014. Plaintiffs fail to account for the legislative changes to show that the GTCA still does not apply. After all, Plaintiffs' claim alleging wrongdoing and seeking compensation while their convictions are intact, regardless of the label, certainly sounds like a state law tort.

Even if this was not a claim sounding in tort under the GTCA, *Sholer* does not allow Plaintiffs an end-run around the notice requirement to protest a fee under statute that says "[i]n all cases where it is alleged or claimed that fees … of the state are in whole or in part unconstitutional or otherwise invalid, the aggrieved person shall pay the full amount thereof to the proper collecting officer and at the same time give notice in writing to said officer stating the grounds of his complaint and that suit will be brought against him for the recovery of all or a specified part of said fees." OKLA. STAT. tit. 62, § 206(A). *Sholer* determined that § 206 did not apply to plaintiffs' claim against DPS since the drivers were not claiming that the fees were unconstitutional and invalid even as applied to themselves. 945 P.2d at 478. "Rather, they

dispute[d] only the accounting practices of the DPS in requiring the payment of multiple reinstatement fees." *Id*. In other words, plaintiffs there never asserted that they were not liable to pay the fee under the statute, only that they were charged too much under DPS's calculation method. *Sholer*'s ruling in this regard is readily distinguishable from the present claim

Here, Plaintiffs are not merely challenging Defendants' calculation method, but in fact are disputing the validity of the fees paid pursuant to their criminal convictions in state court. Simply reading the Complaint demonstrates that fact. *See* [Doc. 1, ¶ 59]. ("As a result of the wrongful prosecution, the State of Oklahoma and/or its political subdivisions have been unjustly enriched."). While they may allege that they have paid their "fees," they have not complied with § 206 by giving "notice" to the "proper collecting officer" at the time of payment to inform said collecting officer that they intended to challenge the fees to lay the ground for such fee "protest."

Plaintiffs either seek damages from the State for an alleged wrongdoing based in tort, *see generally*, [Doc. 1, p. 3] ("unjust," "unlawful," prosecution resulting in "ill-gotten gains")— subject to the notice requirement of the GTCA, or they seek return of fees because the "fees … of the state are in whole or in part … invalid"—subject to the notice requirement of § 206. Either way, they have failed to comply with the notice requirements set forth in Oklahoma law. The district attorneys request dismissal of Plaintiffs' claims for failure to state a claim upon which relief can be granted. In the alternative, defendants respectfully request that this Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claim as it raises novel and complex issues of state law.

**PROPOSITION IV:   THIS COURT SHOULD ABSTAIN FROM HEARING PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF**

This Court should also abstain from interfering in state court proceedings and decline to hear the Cherokee Reservation issue. To begin with, the issue—while of extreme importance—as presented in this context is merely the grounds on which Plaintiffs base their challenges to their state law convictions and cannot stand on its own. Moreover, the *Younger* abstention doctrine requires that "a federal court refrain from hearing an action over which it has jurisdiction when [the] federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) affords an adequate opportunity to raise the federal claims." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002) (citations omitted). This unique post-*McGirt* era presents one of the rare occasions necessary to invoke this doctrine.

In light of *McGirt*, the Oklahoma Court of Criminal Appeals ("OCCA") remanded numerous appeals to the district courts for evidentiary hearings to determine "(1) whether Congress established a reservation for the Cherokee Nation, and (2) if so, whether Congress specifically erased those boundaries and disestablished the reservation." *See generally OCCA Orders Remanding for Evidentiary Hearings*, attached as Exhibit 1. Recognizing the important state interest in these hearings, the OCCA requested the Attorney General and district attorneys to work in coordination to effect uniformity and completeness in the hearing process. And, in making this determination, the state courts will follow the analysis outlined in *McGirt* considering "any evidence the parties provide, including but not limited to treaties, statutes, maps, and/or testimony." *Id.*

Because the Cherokee Nation has a strong interest, they have requested to file an amicus brief for all direct appeals that have raised the issue concerning the Cherokee Nation as a reservation defined by 18 U.S.C. § 1151(a). *See generally Unopposed Application to file Amicus Briefs*, attached as Exhibit 2 (identifying at least 9 direct appeals that have raised the issue of whether the Cherokee Reservation has been disestablished). The Cherokee Nation states that it, rather than counsel for Plaintiffs, is best suited "to provide background history and discuss federal law concerning these issues, including the discussion of its treaties, its allotment agreement, other allotment era federal laws, and the applicability of the *McGirt* decision to the Cherokee Reservation." *Id.* at ¶ 9. No doubt this gives the state court an adequate opportunity to answer the question.

Notably, the Cherokee Nation wants to address the effect *McGirt* has for determining criminal jurisdiction over an offense covered by the General Crimes Act, 18 U.S.C. § 1152, committed on the Reservation by non-Indians against Indians or, for certain crimes, by an Indian against a non-Indian. *Id.* at ¶ 4. Despite Plaintiffs' assertions, *McGirt* did not extend to traffic offenses or misdemeanor offenses. In short, the *McGirt* decision alone is not enough to establish Plaintiffs' claims. *Cf.* [Doc. 1, ¶ 77(a)]. The U.S. Supreme Court was clear that "[e]ach tribe's treaties must be considered on their own terms, and the only question [in *McGirt*] concerns the Creek." 140 S.Ct. at 2479. Furthermore, unlike here, *McGirt* dealt exclusively with jurisdiction under the Major Crimes Act, stating "the [Major Crimes Act] applies only to certain crimes committed in Indian country by Indian defendants." *Id.*

Given that the evidentiary hearings will be held within the next sixty (60) days in state court for the precise purposes at issue here, this Court should decline to hear this claim and dismiss this matter.

## CONCLUSION

For these reasons, the district attorneys respectfully request this Court dismiss all claims over which it has original jurisdiction, and decline to exercise supplemental jurisdiction over Plaintiffs' remaining claims which raise novel and complex issues of state law.

Respectfully submitted,

 /s/Jacqueline R. Zamarripa
**JACQUELINE R. ZAMARRIPA, OBA #33647**
Assistant Attorney General
**RANDALL J. YATES, OBA #30304**
Assistant Solicitor General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
T| (405) 522-4448
T| (405) 521-3921
F| (405) 521-4518
Email: Jackie.Zamarripa@oag.ok.gov
Email: Randall.Yates@oag.ok.gov
*Attorneys for Kevin Buchanan, Kenny Wright, Matt Ballard, and Steve Kunzweiler*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants with entries of appearance filed of record.

/s/Jacqueline R. Zamarripa
Jacqueline R. Zamarripa