IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

1. TAYLEUR RAYE PICKUP                          )
2. CHANDA LYNELLE BUTCHER                       )
3. LINDSEY REANNA BUTCHER                       )
4. CRYSTAL LEE LEACH                            )
5. SHYANNE NICOLE SIXKILLER                     )
6. AND OTHERS SIMILARLY SITUATED,               )
                                                )
                    Plaintiffs,                 )
                                                )
vs.                                             )        Case No. 20-CV-346-JED-FHM
                                                )
1. THE DISTRICT COURT OF NOWATA                 )
   COUNTY, OKLAHOMA                             )
2. THE DISTRICT COURT OF                        )
   WASHINGTON COUNTY, OKLAHOMA                  )
3. THE DISTRICT COURT OF DELAWARE               )
   COUNTY, OKLAHOMA                             )
4. THE DISTRICT COURT OF CRAIG                  )
   COUNTY, OKLAHOMA                             )
5. THE DISTRICT COURT OF MAYES                  )
   COUNTY, OKLAHOMA                             )
6. THE DISTRICT COURT OF ROGERS                 )
   COUNTY, OKLAHOMA                             )
7. KEVIN WRIGHT, in his official capacity,      )
   District Attorney of Nowata and Washington   )
   Counties, Oklahoma                           )
8. KENNY WRIGHT, in his official capacity,      )
   District Attorney of Delaware County,        )
   Oklahoma                                     )
9. MATT BALLARD in his official capacity,       )
   District Attorney of Craig, Mayes, and Rogers )
   Counties, Oklahoma                           )
10. STEVE KUNZWEILER, in his official           )
    capacity, District Attorney of Tulsa County, )
    Oklahoma                                     )
11. APRIL FRAUENBERGER, in her official         )
    capacity, Court Clerk of Nowata County,     )
    Oklahoma                                     )
12. JILL SPITZER, in her official capacity,     )
    Court Clerk of Washington County, Oklahoma  )
13. CAROLINE WEAVER, in her official            )
    capacity, Court Clerk of Delaware County,   )
    Oklahoma                                     )

14. DEBORAH MASON, in her official capacity,       )
    Court Clerk of Craig County, Oklahoma          )
15. LAURA WADE, in her official capacity,          )
    Court Clerk of Mayes County, Oklahoma          )
16. CATHI EDWARDS, in her official capacity,       )
    Court Clerk of Rogers County, Oklahoma         )
17. DON NEWBERRY, in his official capacity as      )
    Court Clerk of Tulsa County, Oklahoma          )
18. THE TOWN OF ADAIR, OKLAHOMA                    )
19. THE CITY OF BARTLESVILLE,                      )
    OKLAHOMA                                       )
20. THE TOWN OF BIG CABIN, OKLAHOMA                )
21. THE TOWN OF BLUEJACKET, OKLAHOMA)
22. THE CITY OF CATOOSA, OKLAHOMA                  )
23. THE TOWN OF CHELSEA, OKLAHOMA                  )
24. THE TOWN OF CHOTEAU, OKLAHOMA                  )
25. THE CITY OF CLAREMORE, OKLAHOMA                )
26. THE CITY OF COLLINSVILLE,                      )
    OKLAHOMA                                       )
27. THE TOWN OF COPAN, OKLAHOMA                    )
28. THE CITY OF DEWEY, OKLAHOMA                    )
29. THE TOWN OF DISNEY, OKLAHOMA                   )
30. THE CITY OF GROVE, OKLAHOMA                    )
31. THE CITY OF JAY, OKLAHOMA                      )
32. THE TOWN OF KANSAS, OKLAHOMA                   )
33. THE TOWN OF LANGLEY, OKLAHOMA                  )
34. THE TOWN OF LOCUST GROVE,                      )
    OKLAHOMA                                       )
35. THE CITY OF NOWATA, OKLAHOMA                   )
36. THE TOWN OF OOLOGAH, OKLAHMA                   )
37. THE CITY OF OWASSO, OKLAHOMA                   )
38. THE CITY OF PRYOR, OKLAHOMA                    )
39. THE TOWN OF RAMONA, OKLAHOMA                   )
40. THE TOWN OF SALINA, OKLAHOMA                   )
41. THE TOWN OF SOUTH COFFEYVILLE,                 )
    OKLAHOMA                                       )
42. THE TOWN OF SPAVINAW, OKLAHOMA                 )
43. THE TOWN OF STRANG, OKLAHOMA                   )
44. THE TOWN OF TALALA, OKLAHOMA                   )
45. THE TOWN OF VERDIGRIS, OKLAHOMA                )
46. THE CITY OF VINITA, OKLAHOMA                   )
47. THE TOWN OF WARNER, OKLAHOMA                   )
48. THE TOWN OF WEST SILOAM SPRINGS,               )
    OKLAHOMA                                       )
                                                   )
                    Defendants.                    )

**DEFENDANTS', TOWN OF ADAIR, CITY OF BARTLESVILLE, TOWN OF BIG CABIN, TOWN OF BLUEJACKET, CITY OF CATOOSA, TOWN OF CHELSEA, TOWN OF CHOUTEAU, CITY OF CLAREMORE, CITY OF COLLINSIVLLE, TOWN OF COPAN, CITY OF DEWEY, TOWN OF DISNEY, CITY OF GROVE, CITY OF JAY, TOWN OF KANSAS, TOWN OF LANGLEY, TOWN OF LOCUST GROVE, TOWN OF NOWATA, TOWN OF OOLOGAH, CITY OF PRYOR, TOWN OF RAMONA, TOWN OF SALINA, TOWN OF SOUTH COFFEYVILLE, TOWN OF SPAVINAW. TOWN OF STRANG, TOWN OF TALALA, TOWN OF VERDIGRIS, CITY OF VINITA, TOWN OF WARNER AND TOWN OF WEST SILOAM SPRINGS, MOTION TO DISMISS AND BRIEF IN SUPPORT**

Andrew W. Lester, OBA No. 5388
Shannon F. Davies, OBA No. 13565
Courtney D. Powell, OBA No. 19444
Anthony J. Ferate, OBA No. 21171
Spencer Fane LLP
9400 N. Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114-7423
Telephone: (405) 844-9900
Facsimile: (405) 844-9958
alester@spencerfane.com
sdavies@spencerfane.com
cpowell@spencerfane.com
ajferate@spencerfane.com

August 27, 2020

OK 549215.1

## TABLE OF CONTENTS

BACKGROUND ..............................................................................................................1

SUMMARY OF FACTS .................................................................................................2

ARGUMENT AND AUTHORITIES ............................................................................3

      Standard of Review .............................................................................................3

**Proposition I: The Curtis Act Forecloses Plaintiffs'**
**Claims Against Municipalities** ...................................................................................4

**Proposition II: A State Court Loser May Not Seek**
**Redress in Federal District Court** ..............................................................................6

**Proposition III: Plaintiffs' failed to Seek Redress**
**Under the Oklahoma Uniform Post-Conviction Procedure**
**Act and Cannot Seek to Remedy This Failure by a Civil Action** ................................8

**Proposition IV: *Heck v. Humphrey* Bars Plaintiffs' Claims** ..................................10

**Proposition V: Equity Demands That the Complaint be Dismissed** ......................11

      Laches .................................................................................................................12

      Waiver and Estoppel ........................................................................................13

      Unclean Hands .................................................................................................14

**Proposition VI: Plaintiffs Fail to State a Claim for Money**
**Had and Received** .....................................................................................................15

**Proposition VII: the Court Lacks Subject Matter**
**Jurisdiction Because Plaintiffs Lack Standing** ........................................................16

**CONCLUSION** ..........................................................................................................18

**RELIEF REQUESTED** ..............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Case Law</u>**
*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (2006)................................................................................................3

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................3, 18

*Basso v. Utah Power & Light Co.,*
495 F.2d 906 (10th Cir. 1974) ............................................................................3

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...........................................................................................3, 18

*Campbell v. City of Spencer,*
682 F.3d 1278 (10th Cir. 2012) .........................................................................8

*Chapman v. Oklahoma,*
472 F.3d 747 (10th Cir. 2006) ...........................................................................8

*Crown Point I, LLC v. Intermountain Rural Elec. Ass'n,*
319 F.3d 1211 (10th Cir.2003) ..........................................................................8

*Ehlers v. Vinal,*
382 F.2d 58 (8th Cir. 1967) ...............................................................................15

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.,*
544 U.S. 280 (2005)............................................................................................7

*Golden v. Zwickler,*
394 U.S. 103 (1969)............................................................................................17

*Heck v. Humphrey,*
512 U.S. 477 (1994)........................................................................................10, 11

*Holt v. United States,*
46 F.3d 1000 (10th Cir. 1995) ...........................................................................3

*Houston Oilers, Inc. v. Neely,*
361 F.2d 36 (10th Cir. 1966) .............................................................................14

*Hutchinson v. Pfeil,*
105 F.3d 562 (10th Cir. 1997) ...........................................................................12

OK 549212.1

*Johnson v. De Grandy,*
512 US. 997 (1994) ..................................................................................................7

*Kiowa Indian Tribe of Oklahoma v. Hoover,*
150 F.3d 1163 (10th Cir. 1998) .............................................................................7

*Lampton Welding Supply Co., Inc. v. Stobaugh,*
2012 WL 5878875 (N.D. Okla. Nov. 21, 2012) ..................................................15

*Lujan v. Defendants of Wildlife,*
504 U.S. 555 (1992)..............................................................................................17

*McFadden v. City of Midwest City,*
2014 WL 798013 (W.D.Okla. Feb. 27, 2014) ......................................................11

*McGirt v. Oklahoma,*
591 U.S. __, 140 S.Ct. 2452 (2020)......................................1, 2, 5, 6, 11, 14, 15

*McKinney v. Gannet Co.,*
694 F.2d 1240 (10th Cir. 1982) ............................................................................17

*McNutt v. General Motors Acceptance Corp. of Indiana,*
298 U.S. 178 (1936)..............................................................................................18

*Mobley v. McCormick,*
40 F.3d 337 (10th Cir. 1994) ..................................................................................3

*Muscogee (Creek) Nation v. Hodel,*
851 F.2d 1439 (D.C. Cir. 1988)..............................................................................6

*New England Mut. Life Ins. Co. v. Grant,*
56 F.Supp. 192 (D.Mass. 1944) ......................................................................15, 16

*Normandeau v. City of Phoenix,*
2012 WL 621730, (D.Ariz. Feb. 24, 2012)............................................................8

*Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.,*
324 U.S. 806 (1945)..............................................................................................14

*Ridge at Red Hawk, LLC v. Schneider,*
493 F.3d 1174 (10th Cir. 2007) ........................................................................3, 18

*Ryan v. Spaniol,*
193 F.2d 551 (10th Cir. 1951) ..............................................................................11

iv

*Spokeo, Inc. v. Robins*,
578 U.S. ___, 136 S.Ct. 1540 (2016)............................................................................17

*Taylor v. City of Bixby*,
2012 WL 6115051 (N.D.Okla. Dec. 10, 2012)..............................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..........................................................................................................3

*Tomek v. Apple, Inc.*,
 2012 WL 2857035 (E.D.Cal. 2012)...............................................................................15

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. ___, 137 S.Ct. 1645 (2017)..............................................................................16

*Winn v. Shugart*,
112 F.2d 617 (10th Cir. 1940) ........................................................................................12

*Younger v. Harris*,
401 U.S. 37 (1971)........................................................................................................7, 8

## Oklahoma Case Law

*Apex Siding & Roofing Company v. First Federal Savings  & Loan of Association of Shawnee*,
1956 OK 157, 301 P.2d 352.............................................................................................13

*Continental Oil Co. v. Rapp*,
1956 OK 171, 301 P.2d 198.......................................................................................11, 15

*Duncan v. Anderson*,
1926 OK 924, 250 P. 1018...............................................................................................15

*Dutton v. City of Midwest City,*
 2015 OK 51, 353 P.3d 532............................................................................................9, 11

*Ex Parte Nowabbi*,
1936 OK CR 123, 61 P.2d 1139 ......................................................................................13

*Hous. Auth. of Seminole Nation v. Harjo*,
1990 OK 35, 790 P.2d 1098.............................................................................................13

*Louisiana Realty Co. v. City of McAlester*,
1910 OK 81, 108 P. 391...................................................................................................13

*Oklahoma Dep't of Pub. Safety v. McCrady*,
2007 OK 39, 176 P.3d 1194, ............................................................................................9

*Parks v. Classen,*
1932 OK 157, 9 P.2d 432................................................................................12

*Sholer v. State ex rel. Dep.t of Pub. Safety,*
1995 OK 150, 945 P.2d 469............................................................................16

*Smith v. The Baptist Foundation of Oklahoma,*
2002 OK 57, 50 P.3d 1132..............................................................................12

**Additional State Case Law**

*Reid v. Reid,* 944 S.W.2d 559 (Ark. App. 1997) ....................................14

**Federal Statutes, Rules and Acts**

25 U.S.C. § 503 ..................................................................................................6

25 U.S.C. § 5203 ................................................................................................6

28 U.S.C. § 1738 ................................................................................................7

42 U.S.C. § 1983 ...............................................................................2, 10, 11, 17

Fed. R. Civ. P. 12(b)(1) ....................................................................................1

Fed. R. Civ. P. 12 (b)(6)................................................................................1, 3

Act of July 1, 1902................................................................................5, 6, 18

Curtis Act of 1898,
30 Stat. 499 ............................................................................4, 5, 6, 13, 18, 19

Dawes Act of 1887............................................................................................4

Major Crimes Act
18 U.S.C. § 1153 ...........................................................................................1, 5

Oklahoma Enabling Act,
34 Stat. 267 (1906)......................................................................................5, 13

**Oklahoma Statutes**

11 O.S. § 27-103 .............................................................................................12

11 O.S. § 28-101 .............................................................................................12

vi

20 O.S. § 40 ...................................................................................................9

20 O.S. § 1087 ...............................................................................................9

22 O.S. § 1080 (OUPCPA) .......................................................9, 10, 12, 14, 17

**Additional Authority**

Blansett, *The Settlement of America: An Encyclopedia of Westward Expansion
from Jamestown to the Closing of the Frontier*. Routledge. pp. 161–162...........................4

Brief of *Amici Curiae* Historians, Legal Scholars and Cherokee Nation
in Support of Respondent, *Carpenter v. Murphy*, U.S. Supreme Court, No. 17-1107 .......5

https://www.loc.gov/law/help/statutes-at-large/55th-congress/session-2
/c55s2ch517.pdf..............................................................................................4

https://www.loc.gov/law/help/statutes-at-large/59th-congress/session-1
/c59s1ch3335.pdf.............................................................................................5

https://www.loc.gov/law/help/statutes-at-large/57th-congress/session-1
/c57s1ch1375.pdf.............................................................................................5

https://www.supremecourt.gov/DocketPDF/17/17-
1107/64934/20180926145410469_Brief%20of%20Amici%20Curiae.pdf.......................5

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Town of Adair, City of Bartlesville, Town of Big Cabin, Town of Bluejacket, City of Catoosa, Town of Chelsea, Town of Chouteau, City of Claremore, City of Collinsville, Town of Copan, City of Dewey, Town of Disney, City of Grove, City of Jay, Town of Kansas, Town of Langley, Town of Locust Grove, City of Nowata, Town of Oologah, City of Pryor, Town of Ramona, Town of Salina, Town of South Coffeyville, Town of Spavinaw, Town of Strang, Town of Talala, Town of Verdigris, City of Vinita, Town of Warner, and Town of West Siloam Springs (collectively, "Municipalities")[1] move to dismiss Plaintiffs' Complaint against them. This court lacks jurisdiction to hear these claims. Moreover, Plaintiffs fail to state a claim upon which relief can be granted. All claims against Municipalities must be dismissed.

## BACKGROUND

This action was filed almost immediately after the United States Supreme Court ruled in *McGirt v. Oklahoma*, 591 U.S. __, 140 S.Ct. 2452 (2020), that under the Major Crimes Act ("MCA"), "land reserved for the Creek Nation since the 19th Century remains 'Indian country'." 140 S.Ct. at 2455. *McGirt* concerned whether the MCA applied to the crimes charged there. It addressed the existence of the Creek reservation and made no determination regarding whether the Cherokee reservation still exists.

Plaintiffs, who assert class representation, seek to enlarge the limited holding in *McGirt*. They ask this Court to find that the Cherokee Nation reservation exists and therefore tribal members cannot be subjected to municipal laws, codes, or ordinances. Plaintiffs' interpretation of *McGirt*, however, far exceeds its actual holding and is wrongly applied here.

---

[1] This brief is presented on behalf of all municipalities named in this matter except the City of Owasso.

1

## SUMMARY OF FACTS

Plaintiffs allege they are members of either the Cherokee Nation or the United Keetoowah Band of Cherokee Indians. Complaint, Dkt. No. 2, at ¶¶ 1 – 5. While all Plaintiffs allege generally they have been prosecuted in either state district court or municipal court, only one Plaintiff, Ms. Sixkiller, alleges anything specific about a prosecution in municipal court, that of the Town of Locust Grove. She asserts she received a traffic ticket for speeding, Complaint, ¶ 65, but does not allege that she was convicted, or that she paid a fine, or that a fine was paid to or collected by Locust Grove. None of the Plaintiffs alleges a violation of the MCA. Complaint, ¶¶ 59 – 65.

Ms. Sixkiller alleges no actual harm, an essential element of her claim. Complaint, ¶ 65. As to Municipalities, no other Plaintiff alleges anything more specific than that they collectively have "been prosecuted [in municipal court] for traffic offenses or misdemeanor crimes occurring within the Cherokee Reservation." Complaint, ¶ 6. But they wholly fail to set forth any specific municipal prosecutions. Regarding their convictions and fines, none of the Plaintiffs alleges that he or she sought appellate review or attempted to exercise available post-conviction procedures.

Plaintiffs seek a declaratory judgment that the Cherokee Reservation has not been disestablished and any action brought by the State of Oklahoma or its political subdivisions is void due to lack of subject matter jurisdiction. They claim damages for money had and received and assert a violation of 42 U.S.C. § 1983. All of the claims against Municipalities are based on Plaintiffs' erroneous contention that the Supreme Court's decision in *McGirt* renders Municipalities unable to enforce their ordinances within their boundaries as to Plaintiffs, because they are tribal members. As this brief will demonstrate, Plaintiffs are mistaken.

OK 549213.1

## ARGUMENT AND AUTHORITIES

### Standard of Review

The sufficiency of a complaint is a question of law, and when considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994), citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). However, the "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis original).

A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it "tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "[C]onclusory statements without reference to [a complaint's] factual context," *id.*, at 686, are not entitled to an assumption of truth.

In determining whether the court lacks subject matter jurisdiction, the plaintiff, the party asserting jurisdiction, has burden of establishing it. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). A party may allege a facial attack which questions the sufficiency of the complaint. *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995). A claim must be dismissed if the court, either by suggestion of a party or otherwise, lacks subject matter jurisdiction. *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006).

OK 549213.1

## PROPOSITION I:
## THE CURTIS ACT FORECLOSES PLAINTIFFS' CLAIMS
## AGAINST MUNICIPALITIES.

Section 14 of the Curtis Act[2] provides municipalities with authority over "*all* inhabitants of such cities and towns, *without regard to race*," and provides individuals, including tribal members, "*shall be subject to all laws and ordinances of such city or town governments* [ ]." Curtis Act of 1898, § 14, 30 Stat. 499, 500 (emphasis added). Because § 14 of the Curtis Act unequivocally says cities and towns may adopt and enforce municipal ordinances, Plaintiffs' claims against Municipalities cannot survive, as Municipalities were merely exercising their congressionally created grant of authority.

With the 1887 passage of the Dawes Act, Congress worked to promote "a capitalist and proprietary relationship with property"[3] among Native American tribes. To advance this goal, the Dawes Act encouraged the disestablishment of tribal lands in favor of allotments to tribal members. The Five Civilized Tribes (Muscogee (Creek), Cherokee, Choctaw, Chickasaw and Seminole Nations) (the "Five Tribes") were exempt from the Dawes Act, due to the fee ownership of their land, until 1898. After efforts to negotiate allotment with the Five Tribes failed, then-Senator and future Vice President Charles Curtis proposed what became known as the Curtis Act of 1898, 30 Stat. 495. The Curtis Act extended the provisions of the Dawes Act to the Five Tribes, and mandated the abolition of "all tribal courts in Indian Country[.]" Curtis Act of 1898, § 28, 30 Stat. 504-505

Section 14 of the Curtis Act empowered the inhabitants of any city or town in Indian

---

[2] https://www.loc.gov/law/help/statutes-at-large/55th-congress/session-2/c55s2ch517.pdf ("Curtis Act").
[3] Blansett, *The Settlement of America: An Encyclopedia of Westward Expansion from Jamestown to the Closing of the Frontier*. Routledge. pp. 161–162.

OK 549213.1

Territory to incorporate, and provided that "the city or town government … shall possess all the powers and exercise all the rights of similar municipalities in said State of Arkansas." Curtis Act of 1898, § 14, 30 Stat. 499. Specifically, § 14 of the Curtis Act provided for the incorporation of municipalities within the Territory consistent with the laws of Arkansas. Upon the approval of Oklahoma's Enabling Act,[4] 34 Stat. 267 (1906), the references to Arkansas law were replaced by references instead to the law of the new State of Oklahoma. Since Oklahoma statehood, there has been no amendment to § 14 of the Curtis Act (§ 73 of the 1902 Act).

The Cherokee Nation was the last of the Five Tribes to enter into such an agreement, and the agreement was codified as the Act of July 1, 1902. 32 Stat. 716 ("1902 Act"). The 1902 Act[5] "expressly preserved" § 14 of the Curtis Act. 1902 Act, § 73, 32 Stat. 716. *See also* Brief of *Amici Curiae* Historians, Legal Scholars and Cherokee Nation in Support of Respondent, *Carpenter v. Murphy*,[6] U.S. Supreme Court, No. 17-1107, at 25 ("the ratified agreement … expressly preserved only §§ 14 and 27 of the Curtis Act").

Plaintiffs' reliance on the Supreme Court's recent ruling in *McGirt* is misplaced. As *McGirt* recognizes, "[t]he only question before us, however, concerns the statutory definition of 'Indian country' as it applies in federal criminal law under the [Major Crimes Act, 18 U.S.C. § 1153.]" *McGirt*, 140 S.Ct. at 2480. The Court ruled that exclusive federal jurisdiction over the enumerated major crimes "applied immediately according to [the Major Crimes Act's] plain terms." *McGirt,* 140 S.Ct. at 2477. In contrast to the situation in *McGirt*, the Curtis Act specifically allows cities

---

[4] https://www.loc.gov/law/help/statutes-at-large/59th-congress/session-1/c59s1ch3335.pdf ("Enabling Act").

[5] https://www.loc.gov/law/help/statutes-at-large/57th-congress/session-1/c57s1ch1375.pdf ("1902 Act").

[6] https://www.supremecourt.gov/DocketPDF/17/17-1107/64934/20180926145410469_Brief%20of%20Amici%20Curiae.pdf

OK 549213.1

and towns, including Municipalities, to adopt and enforce municipal ordinances. "When interpreting Congress's work in this arena, no less than any other, our charge is usually to ascertain and follow the original meaning of the law before us." *McGirt*, 140 S.Ct. at 2468. The Curtis Act is that "clear expression of the intention of Congress," *id.*, 140 S.Ct. at 2477, that Municipalities have authority to try tribal members for municipal offenses in municipal courts.

The Complaint, at ¶ 53, broadly overstates *McGirt's* holding. *McGirt* does not abolish municipalities or their authority. In fact, it does not even address Section 14 of the Curtis Act. To be sure, some portions of the Curtis Act have been superseded. For example, in *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439 (D.C. Cir. 1988), the question before the court was whether adoption of the Oklahoma Indian Welfare Act ("OIWA"), specifically 25 U.S.C. § 5203[7], repealed § 28 of the Curtis Act, the provision that had abolished tribal courts. *Hodel* held that the OIWA, by allowing the establishment of tribal courts, had effectively repealed § 28 and its ban on tribal courts. In contrast, § 14 of the Curtis Act remains untouched.

Section 73 of the 1902 Act specifically preserves § 14 of the Curtis Act. Unlike § 28, § 14 of the Curtis Act has never been repealed. It is still the applicable law. Cities and towns retain the power to adopt and to enforce municipal ordinances. There can be no claim against Municipalities. As to Municipalities, Plaintiffs' Complaint must be dismissed.

**PROPOSITION II:**
**A STATE COURT LOSER MAY NOT SEEK REDRESS IN**
**FEDERAL DISTRICT COURT.**

Insofar as their claims against Municipalities are concerned, Plaintiffs assert wrongful conviction based on a municipal-court final judgment or decision. Complaint, ¶¶ 59-65 (claims against Municipalities all arise from misdemeanor convictions after an alleged "wrongful

---

[7] At the time of *Hodel*, the section was codified at 25 U.S.C. § 503.

6

prosecution"). The *Rooker-Feldman* doctrine, however, bars "a party losing in state court … from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1169 (10th Cir. 1998), citing *Johnson v. De Grandy,* 512 US. 997, 1005-1006 (1994).

While the *Rooker-Feldman* doctrine does not apply to a claim independent of a state court judgment, it does apply to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005). *Cf. Younger v. Harris*, 401 U.S. 37 (1971) (explaining *Younger* abstention against ongoing state court proceedings). Simply put, *Rooker-Feldman* bars actions "complaining of injuries caused by the state-court judgments." *Id. See also* 28 U.S.C. § 1738 (state court judicial proceedings are entitled to full faith and credit). All of Plaintiffs' claims against Municipalities are just that – asserted injuries allegedly caused by municipal court judgments.

Plaintiffs demand a declaration that "any conviction or deferred adjudication against the members of the Class by the State of Oklahoma or any political subdivision thereof to be void." Complaint, ¶ 21. They also seek disgorgement of any fees or monies paid into Municipalities' courts. *Id.* They do not challenge the constitutionality of the underlying ordinances. Instead, they challenge application of the underlying ordinances to them because of their status as tribal members.

In other words, Plaintiffs are challenging the municipal judgments.[8] Their claim is that

---

[8] To the extent Plaintiffs are complaining about ongoing criminal proceedings, "Younger

"[t]he alleged constitutional wrong was the content of the judgment." *Campbell v. City of Spencer,*
682 F.3d 1278, 1285 (10th Cir. 2012). That means that their claim is "barred by *Rooker-Feldman*."
*Id.* The source of Plaintiffs' alleged injury against Municipalities – their municipal court judgments
or deferred adjudications and the money they allege was collected upon conviction – is the
municipal court's enforcement of the judgment on those convictions.

In *Normandeau v. City of Phoenix,* 2012 WL 621730 * 4 (D.Ariz. Feb. 24, 2012), the
plaintiff sought the return of money he had paid pursuant to a state court judgment. The court
found that if it "were to grant the relief [p]laintiff seeks, it would necessarily involve overturning
the state-court judgment that deprived him of his money in the first place. The *Rooker-Feldman*
doctrine forbids federal courts from taking such action."

That is precisely the situation here. Plaintiffs are asking this Court to overturn the state
court judgments and return the monies they allege they paid. *Rooker-Feldman* prohibits Plaintiffs'
quest to overturn these state court judgments in this court. As that is the only relief Plaintiffs are
seeking against Municipalities, the claims against Municipalities must be dismissed.

**PROPOSITION III:**
**PLAINTIFFS' FAILED TO SEEK REDRESS UNDER THE OKLAHOMA**
**UNIFORM POST-CONVICTION PROCEDURE ACT AND CANNOT SEEK TO**
**REMEDY THIS FAILURE BY A CIVIL ACTION.**

Plaintiffs are seeking to undo the consequences of their actions. Specifically, they seek
disgorgement of fines and fees they allege they paid as a consequence of having been found guilty

---

abstention is non-discretionary and, absent extraordinary circumstances, a district court is required
to abstain." *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006), quoting *Crown Point I,*
*LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003). As shown in
Proposition VI, *infra*, the only Plaintiff who alleges anything specific about any municipal court
case is Ms. Sixkiller, who never alleges that there was any disposition to her "ticket" and never
alleges payment of any fine. If her municipal court case is ongoing, *Younger* abstention is
mandatory. Similarly, to the extent a deferred adjudication is still pending, *Younger* abstention
would apply, as well.

8

of various criminal charges. Yet, Plaintiffs did not seek any type of state court redress. They could have challenged the municipal courts' jurisdiction. They could have appealed. They could have sought redress under the Oklahoma Uniform Post-Conviction Procedure Act ("OUPCPA"), 22 O.S. §§ 1080, *et seq*. Instead, Plaintiffs did nothing until they filed this case. Plaintiffs' failure to seek any type of appellate or post-conviction relief is fatal to their claims.

The OUPCPA provides a means for challenging a state court conviction or sentence that occurred in violation of the United States Constitution or even where the court was without jurisdiction. 22 O.S. § 1080. It "encompasses and replaces all common law and statutory methods of challenging a conviction or sentence." *Id*. The OUPCPA creates a "post-conviction remedy that supplant[s] the common-law writs and redefined what post-conviction claims may be made." *Dutton v. City of Midwest City,* 2015 OK 51, ¶ 21, 353 P.3d 532, 541. The Oklahoma Court of Criminal Appeals has "exclusive appellate jurisdiction" in all criminal cases which includes review of applications for post-conviction relief. 20 O.S. § 40; 20 O.S. § 1087.

The doctrines of res judicata, or claims preclusion, and collateral estoppel, or issue preclusion, also prevent Plaintiffs from relitigating their claims. "[O]nce a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim." *Oklahoma Dep't of Pub. Safety v. McCrady*, 2007 OK 39, ¶ 7, 176 P.3d 1194, 1199, *as corrected on denial of reh'g* (Sept. 17, 2007). Issue preclusion operates as a "bar from relitigation [of] both correct and erroneous resolutions of jurisdictional and nonjurisdictional challenges." *Id*. Plaintiffs are asking this court to find their criminal convictions invalid based on a lack of jurisdiction. Because that issue has been decided in court, Plaintiffs are precluded from collaterally attacking the judgments here.

The OUPCPA was available to Plaintiffs if they wanted to contest their municipal court

OK 549213.1

judgments and sentences. But apparently, Plaintiffs chose not to do so. Plaintiffs do not allege they were prevented from asserting their rights under the OUPCPA. They do not allege they were prevented from asserting the municipal courts' lack of jurisdiction because of their tribal membership. Nothing prevented Plaintiffs from contesting their municipal charges (if any) or from asserting that the applicable municipal court did not have jurisdiction over them because they are tribal members engaging in conduct on reservation land.

Plaintiffs cannot simply ignore relief available to them. Furthermore, none of the Plaintiffs even claims he or she was convicted of any specific municipal offense in any specific municipal court, much less harmed thereby in any specific way. Plaintiffs' claims are not cognizable and must be dismissed with prejudice.

**PROPOSITION IV:**
***HECK v. HUMPHREY* BARS PLAINTIFFS' CLAIMS.**

A plaintiff cannot state a claim under the Civil Rights Act of 1871, 42 U.S. § 1983, for a wrongful state court conviction without having first obtained either direct relief in state court or a writ of habeas corpus in federal court. According to the Supreme Court:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Court added that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated **is not cognizable under § 1983**." *Id.* at 487 (emphasis added). The Supreme Court held that "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the

10

plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*.

That is exactly what would happen here. Plaintiffs' prayer for relief makes it clear. They demand that the municipal court judgments or deferred adjudications be declared void, precisely what *Heck* forbids. Thus, as *Heck* says, "the complaint must be dismissed." *Id*.

As the *Heck* Court explained, its holding does not merely "engraft an exhaustion requirement upon § 1983, but rather den[ies] the existence of a cause of action … unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." 512 U.S. at 489. District courts have repeatedly found that *Heck* applies when relief under the OUPCPA is available. *See, e.g., Taylor v. City of Bixby,* 2012 WL 6115051 (N.D.Okla. Dec. 10, 2012) (*Heck* applies where habeas is unavailable but plaintiff has an alternative to challenge the conviction); *McFadden v. City of Midwest City,* 2014 WL 798013 (W.D.Okla. Feb. 27, 2014) (same); *Dutton v. City of Midwest City,* 2014 WL 348982 (W.D.Okla. Jan. 31, 2014) (same).

*Heck* and its progeny prohibit Plaintiffs' claims from proceeding. Plaintiffs had state court avenues for relief. But, instead of asserting their state court claims, they have done nothing. Plaintiffs cannot willfully ignore relief available to them. Their claims must be dismissed.

## PROPOSITION V:
## EQUITY DEMANDS THAT THE COMPLAINT BE DISMISSED.

As the Court said in *McGirt*, "[m]any [ ] legal doctrines—procedural bars, res judicata, statutes of repose, and laches, to name a few—are designed to protect those who have reasonably labored under a mistaken understanding of the law." *McGirt,* 140 S.Ct. at 2481. This is especially true of a claim for money had and received, for such an action "is in the nature of a suit in equity and is governed by equitable principles." *Continental Oil Co.*, 1956 OK 171, ¶ 25, 199, 301 P.2d 198, 202, quoting *Ryan v. Spaniol*, 193 F.2d 551, 553 (10th Cir. 1951). Laches, estoppel, waiver,

and unclean hands, among those many doctrines, bar Plaintiffs' claims against Municipalities.

**Laches**

Laches is an equitable defense that prevents the advancement of claims after an "inexcusable delay" for an "unreasonable and unexplained length of time." *Parks v. Classen Co.*, 1932 OK 157, ¶ 29, 9 P.2d 432, 435; *Smith v. The Baptist Foundation of Oklahoma*, 2002 OK 57, ¶ 9, 50 P.3d 1132, 1138 (noting that laches is an equitable defense). The "[m]ere ignorance of the facts will not excuse delay. One must be diligent and make such inquiry and investigation as the circumstances reasonably suggest and means of knowledge are equivalent to actual knowledge." *Winn v. Shugart*, 112 F.2d 617, 622 (10th Cir. 1940).

Plaintiffs cannot show that there was no reasonable delay in asserting their claims. *See Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir. 1997) (an unreasonable delay in asserting a claim that materially prejudices a defendant is sufficient to invoke laches). Plaintiffs chose to delay. They could have pursued their theory of lack of jurisdiction in their municipal court proceedings or under the OUPCPA. Instead, they now launch a broad collateral attack on final judgments entered under state law, and they seek to disgorge not only monies they paid, but monies paid by any tribal member. Should Plaintiffs succeed, any award of disgorgement would significantly impact Municipalities.

Plaintiffs' claims are relatively straightforward – they assert that, because they are tribal members, Municipalities could not prosecute them for municipal law violations. Under Oklahoma law, municipal courts only have jurisdiction to prosecute violations of the municipal ordinances. 11 O.S. § 27-103[9] ("The municipal court shall have original jurisdiction to hear and determine all

---

[9] None of these Municipalities has "a population of more than sixty-five thousand (65,000) inhabitants, as determined by the latest federal census," hence none qualifies to have a court of record under 11 O.S. § 28-101.

prosecutions wherein a violation of any ordinance of the municipality where the court is established is charged."). At any point during the prosecution for their offenses, Plaintiffs could have asserted that the prosecuting municipality lacked jurisdiction. Plaintiffs chose not to do so in their municipal court case. Their delay in doing so has caused substantial prejudice to Municipalities.

### Waiver and Estoppel

For essentially the same reasons, Plaintiffs have waived their opportunity to allege Municipalities lacked subject matter jurisdiction and are barred from doing so now. At all times, Municipalities acted in good faith and in accordance with case law and Oklahoma law. *Ex Parte Nowabbi*, 1936 OK CR 123, 61 P.2d 1139; *Hous. Auth. of Seminole Nation v. Harjo*, 1990 OK 35, 790 P.2d 1098 (both *Nowabbi* and *Harjo* demonstrate how Oklahoma's top appellate courts struggled with the contours and consequences of what they then-considered the "checkerboard" Indian country); *see also* Oklahoma Enabling Act, 34 Stat. 267 (1906) (by which Oklahoma was admitted to the Union "on equal footing"). Plaintiffs do not allege otherwise.

Equity bars Plaintiffs from asserting claims "against a [municipality] who, in good faith, relied on such conduct and has been thereby led to change [its] position to [its] detriment." *Apex Siding & Roofing Company v. First Federal Savings & Loan of Association of Shawnee*, 1956 OK 157, 301 P.2d 352, 355. When parties are operating under a mutual mistake of law, equity does not benefit one party to the detriment of the other party after the fact. *See, e.g., Louisiana Realty Co. v. City of McAlester,* 1910 OK 81, ¶ 4, 108 P. 391, 392 (noting that to recover funds, they must have been paid through mistake of fact, and not of law.").

Even if this case is viewed in a light most favorable to them— and a world where § 14 of the Curtis Act does not exist — Plaintiffs are estopped from their pursuing claims based on the

13

good faith efforts of Municipalities to follow the understanding of the law as it existed prior to *McGirt*.

**Unclean Hands**

Furthermore, the doctrine of unclean hands also prohibits Plaintiffs' claims. When the conduct complained of is criminal in nature, equity weighs strongly in favor of a finding of unclean hands. *See, e.g., Reid v. Reid,* 944 S.W.2d 559 (Ark. App. 1997); *Houston Oilers, Inc. v. Neely*, 361 F.2d 36, 42 (10th Cir. 1966) ("equity will not in any manner aid a party whose conduct in relation to the litigation matter has been unlawful, unconscionable, or inequitable"). Application of the doctrine of unclean hands "gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.,* 324 U.S. 806, 815 (1945). Unclean hands "prevents a wrongdoer from enjoying the fruits of his transgressions" and "averts an injury to the public." *Id.*

The entire basis of Plaintiffs' claims involves Plaintiffs having committed criminal conduct. Complaint, ¶¶ 59 – 65, 69. Plaintiffs are attempting to disgorge fees they allege they paid to Municipalities over an undescribed but apparently indefinite period of time. Assuming any Plaintiffs were convicted in a court of one of the Municipalities and actually paid a fine – Plaintiffs never actually allege any such conviction or payment of fine – they have a more direct way to deal with the issue. None of the Plaintiffs alleges that he or she raised a claim of lack of jurisdiction within the alleged prosecution or subsequent appeal. None allege that they pursued an OUPCPA claim.

Plaintiffs' claims arise after an "inexcusable delay." They have had plenty of opportunities to pursue their rights within the purported municipal prosecutions themselves. They have had plenty of opportunities to pursue OUPCPA claims for post-conviction relief. By failing to

14

diligently pursue their rights directly, they have essentially waived whatever right they might have had to pursue these claims. To be sure, Plaintiffs allege that Municipalities "labored under a mistaken understanding of the law." *McGirt*, 140 S.Ct. at 2481. Nevertheless, under the equitable doctrines of laches, estoppel, waiver, and unclean hands, these claims must be dismissed.

**PROPOSITION VI:**
**PLAINTIFFS FAIL TO STATE A CLAIM FOR MONEY HAD AND RECEIVED.**

Attempting to circumvent the Oklahoma Governmental Tort Claims Act ("GTCA"), Plaintiffs allege they are seeking to recover for money had and received. Complaint, ¶¶ 86 - 89. They fail, however, to establish the bare bone requirements of the claim. It must be dismissed.

A claim for money had and received may be brought against the actual "receiver and holder of the money." *Duncan v. Anderson*, 1926 OK 924, ¶¶ 2-3, 250 P. 1018, 1019. That is, it is to be brought against the party who actually holds the money. But Plaintiffs have not alleged any facts, beyond their insufficient conclusory allegations, that Municipalities ever collected so much as a single dollar from Defendants. And they make no allegations that the Municipalities are the entities actually holding any of the funds at issue.

Plaintiffs' failure to plead a sum certain is fatal to their claim for money had and received. *See Continental Oil Co.,* 1956 OK 17 at ¶ 0, 301 P.2d at 199 (action for money had and received lies "to recover a sum certain, whenever one has the money of another which he in equity and good conscience has no right to retain"); *Lampton Welding Supply Co., Inc. v. Stobaugh*, 2012 WL 5878875, at * 1 (N.D. Okla. Nov. 21, 2012) (finding that plaintiff did not allege any sum certain), citing *Tomek v. Apple, Inc.*, 2012 WL 2857035, at * 7 (E.D.Cal. 2012) (dismissing "money had and received claim" because complaint failed to allege any "concrete amount" owed). *See also Ehlers v. Vinal*, 382 F.2d 58, 66 (8th Cir. 1967) (noting that in an action for money had and received a plaintiff must "show the exact amount the government is wrongfully holding); *New*

15

*England Mut. Life Ins. Co. v. Grant*, 56 F.Supp. 192, 193 (D.Mass. 1944) ("if the exact amount due is not definitely known … the law is well established that an action will not lie for money had and received").

In this case, Plaintiffs fail to allege any amount due. Instead, they simply rely on conclusory, general allegations, such as that they "have each been made to pay fines and costs." Complaint, ¶ 82. *See also* Complaint, ¶¶ 58 – 65, 69, 70 (containing similarly conclusory allegations). As demonstrated elsewhere, the closest Plaintiffs come to alleging anything specific concerns Ms. Sixkiller in ¶ 65 of the Complaint. Yet, as shown on page 2, *supra*, and in Proposition VII, *infra*, Ms. Sixkiller does not allege she paid any specific amount – she does not even allege she was convicted – much less that any of the Municipalities is holding her money. Instead, she amorphously alleges that "the State of Oklahoma and/or its political subdivisions have been unjustly enriched." *Id.*

Plaintiffs' vague and indeterminate requests for a refund are insufficient to state a claim for money had and received. Moreover, their preemptive reliance on *Sholer v. State ex rel. Dept. of Pub. Safety*, 1995 OK 150, 945 P.2d 469, also fails. In *Sholer*, the amount sought by the plaintiff was set forth and the agency which held the funds was identified. Plaintiffs do not satisfy these basic requirements, failing to allege who holds what funds or even how much the unidentified holder is holding.

**PROPOSITION VII:**
**THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK STANDING.**

It is a basic and fundamental tenet of federal court subject matter jurisdiction that a plaintiff must have standing to assert a claim in federal court. *Town of Chester v. Laroe Estates, Inc.,* 581 U.S. ___, 137 S.Ct. 1645 (2017). Standing requires: (1) the plaintiff suffered an injury in fact, (2)

16

the injury is fairly traceable to the "challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. ___, 136 S.Ct. 1540, 1547 (2016), citing *Lujan v. Defendants of Wildlife,* 504 U.S. 555 (1992). Plaintiffs bear the burden of satisfying these requirements. *Lujan,* 504 U.S. at 561.

First, none of the Plaintiffs, except Ms. Sixkiller, even asserts having been prosecuted by one of these Municipalities. Complaint, ¶¶ 59 - 65. And Ms. Sixkiller, the only Plaintiff who at least alleges having received a municipal ticket, does not say whether she was prosecuted, when a prosecution occurred, who prosecuted her, whether she was convicted, whether or when she paid a fine, whether she objected based on a lack of subject matter jurisdiction, what the outcome was, whether she appealed, whether a conviction was affirmed, or whether she sought any post-conviction relief or otherwise availed herself of the OUPCPA.

Plaintiffs essentially ask that the Court issue an impermissible advisory opinion as to the liability of Municipalities for purported fines and penalties Plaintiffs failed even to allege they paid. *McKinney v. Gannet Co.,* 694 F.2d 1240 (10th Cir. 1982) (federal courts are not empowered to issue advisory opinions); *Golden v. Zwickler*, 394 U.S. 103 (1969) ("concrete legal issues, presented in actual cases, not abstractions are requisite"). That is improper, and shows Plaintiffs lack standing to prosecute these claims.

Even if Ms. Sixkiller alleged a case or controversy, she nevertheless lacks standing to bring these claims. Ms. Sixkiller seeks a declaratory judgment and attempts to allege money had and received and a deprivation under 42 U.S.C. § 1983. Yet, Ms. Sixkiller failed to allege that she suffered any injury that is traceable to Municipalities, or that is likely to be redressed by a favorable decision in this matter. In fact, Ms. Sixkiller has not alleged *any* injury. Her only allegation is she *received* a ticket. Complaint, ¶ 65.

The Complaint never alleges that this court has subject matter jurisdiction, and none of the Plaintiffs has set forth specific allegations showing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936) (plaintiff must allege facts in his or her pleading to show jurisdiction, otherwise plaintiff lacks standing). None of the Plaintiffs set forth any allegations regarding the purported monies they paid to Municipalities. Under *Iqbal*, more is required than just "naked assertions" and "conclusory allegations." *Iqbql,* 556 U.S. at 664, 678.

Plaintiffs' claims are based on the premise that money was wrongfully paid to Municipalities and should be returned. However, there are no facts in the Complaint to support a claim that any Plaintiff paid any money to any of the Municipalities.

At best, the Complaint in this case is one that merely presents a "metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims[.]" *Ridge at Red Hawk, LLC*, 493 F.3d at 1177 (emphasis original). The Complaint does not provide any basis "to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (emphasis original). Instead, it simply "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, quoting *Twombly.* 550 U.S. at 557. Its conclusory allegations do not suffice.

As to the claims against Municipalities, the Court must dismiss the Complaint. Plaintiffs lack standing to bring their claims against Municipalities. Because Plaintiffs lack standing, the court lacks subject matter jurisdiction to proceed further against Municipalities. Whether for lack of subject matter jurisdiction or for failure to state a claim, the Complaint should be dismissed.

## CONCLUSION

Plaintiffs fail to state any cognizable claim against Municipalities. The 1902 Act remains in effect, including its incorporation of § 14 of the Curtis Act. Because of this, any effort to include

Municipalities in this case is without merit. Prosecutions by Municipalities for municipal law offenses, even assuming any had been alleged, were well within Municipalities' rights under § 14 of the Curtis Act because they implicate "ordinance[s] of such city or town governments." Plaintiffs' collateral attack on state court judgments against them is not permitted. Plaintiffs' failure to avail themselves of state court relief mechanisms bars the claims they attempt to bring here. Plaintiffs have failed to state a claim against Municipalities. As to Municipalities, the Complaint must be dismissed.

## RELIEF REQUESTED

Municipalities respectfully request that all claims against them be dismissed with prejudice.

Respectfully Submitted,

s/Courtney D. Powell
Andrew W. Lester, OBA No. 5388
Shannon F. Davies, OBA No. 13565
Courtney D. Powell, OBA No. 19444
Anthony J. Ferate, OBA No. 21171
Spencer Fane LLP
9400 N. Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114-7423
Telephone: (405) 844-9900
Facsimile: (405) 844-9958
alester@spencerfane.com
sdavies@spencerfane.com
cpowell@spencerfane.com
ajferate@spencerfane.com

OK 549213.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2020 I electronically transmitted the attached documents to the Clerk of Court using the ECF system for filing and transmittal of Notice of Electronic Filing to all counsel of record as set forth below:

| | |
|---|---|
| John M. Dunn | jmdunn@johndunnlaw.com |
| Mark D. Lyons | lyonscla@swbell.net |
| Misty S. Fields | misty@mistyfieldsesq.com |
| Keith A. Wilkes | kwilkes@hallestill.com |
| Christopher Collins | cjc@czwlaw.com |
| Jamison Whitson | jcw@czwlaw.com |
| Wellon Poe, Jr. | bp@czwlaw.com |
| Stephen Geries | sig@czwlaw.com |
| Thomas LeBlanc | tleblanc@bestsharp.com |
| Michael Shouse | mshouse@tulsacounty.org |

s/Courtney D. Powell

20

OK 549213.1