**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TAYLEUR RAYE PICKUP, et al., | ) | |
| And Others Similarly Situated, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.  20-CV-346-JED-FHM |
| | ) | |
| THE DISTRICT COURT OF | ) | |
| NOWATA COUNTY, OK, et. al., | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS, THE DISTRICT COURT OF NOWATA COUNTY, THE DISTRICT COURT OF WASHINGTON COUNTY, THE DISTRICT COURT OF DELAWARE COUNTY, THE DISTRICT COURT OF CRAIG COUNTY, THE DISTRICT COURT OF MAYES COUNTY AND THE DISTRICT COURT OF ROGERS COUNTY'S MOTION TO DISMISS AND BRIEF IN SUPPORT (Doc # 18)**

Mark D. Lyons, OBA #5590
LYONS & CLARK, INC.
616 S. Main, Suite 201
Tulsa, OK 74119
(918) 599-8844 Telephone
(918) 599-8585 Facsimile
lyonscla@swbell.net

and

John M. Dunn, OBA #20975
The Law Offices of John M. Dunn, PLLC
616 S. Main, Suite 206
Tulsa, OK 74119
(918) 526-8000 Telephone
(918) 359-5050 Facsimile
jmdunn@johndunnlaw.com
**Attorneys for Plaintiffs**

<u>**TABLE OF CONTENTS AND AUTHORITIES**</u>

**INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    *McGirt v. State of Oklahoma*, _____ U.S. _____, 140 S.Ct. 2452,
        207 L.Ed.2d. 985 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    *Murphy v. Royal*, 875 F.3d 896, 904 (10th Cir. 2017) certiorari granted by
        *Royal v. Murphy*, 138 S.Ct. 2026 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    18 U.S.C. §1151

**BRIEF STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    *McGirt v. State of Oklahoma*, _____ U.S. _____, 140 S.Ct. 2452,
        207 L.Ed.2d. 985 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3
    *Murphy v. Royal*, 875 F.3d 896, 904 (10th Cir. 2017) certiorari granted by
        *Royal v. Murphy*, 138 S.Ct. 2026 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *Negonsott v. Samuels*, 507 U.S. 99, 102-103, 113 S.Ct. 1119, 122 L.Ed.2d 457. . . . . . . 2

    U.S. Const. Art. VI, §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Cherokee Allotment Agreement of 1902 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3
    Five Tribes Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**ARGUMENTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    <u>**THE MOTION TO DISMISS FOR FAILURE TO STATE
      A CLAIM SHOULD BE DENIED AS THE PLAINTIFFS
      HAVE COMPLIED WITH STATUTORY AND
      CASE LAW PLEADING REQUIREMENTS.**</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 575, 127 S.Ct. 1955,
        167 L.Ed.2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7
    Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.ed.2d 80 (1957) . . . . . . . . . . . . 4
    *GFF Corp. v. Associated Wholesale Grocers, Inc.*,
        130 F.3d 1381, 1384 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *McGirt v. State of Oklahoma*, _____ U.S. _____, 140 S.Ct. 2452,
        207 L.Ed.2d. 985 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 4
    *Murphy v. Royal*, 875 F.3d 896, 904 (10th Cir. 2017) certiorari granted by
        *Royal v. Murphy*, 138 S.Ct. 2026 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 (10th Cir. 2015) . . . . . . . . . . . . 6
    *Swierkiewicz v. Sorema, NA*, 122 S.Ct. 992, 1521 L.Ed. 2d. . . . . . . . . . . . . . . . . . . . . 5

    FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

The New Federal Rules of Civil Procedure: The Last Phase - Underlying
Philosophy Embodied in Some of the Basic Provisions of the
New Procedure, 23 A.B.A.J. 976 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.    **ALL THE COURT CLERKS AND DISTRICT COURTS
       ARE PROPER PARTIES TO THIS CASE AND ALL
       HAVE BEEN PROPERLY SERVED WITH THE
       COMPLAINT AND SUMMONS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mcclelland v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . 7
*Miller v. City of Misson, Kansas*, 705 F.2d 368, 375 (10th Cir. 1983) . . . . . . . . . . . . . . 7

42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.     **As is discussed in more detail in responses to motions
       to dismiss on behalf of court clerks, a clerk is a person
       capable of being sued in federal court.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bishop v. Oklahoma ex. rel. Edmondson*,
       447 F. Supp. 23 1239, 1255 (N.D. Okla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Bishop v. United States ex. rel. Holder*, 962 F.Supp.2d 1252 (N.D. Okla. 2014) . . . . . . . 9
*Roth v. Union National Bank of Bartlesville*, 1916 OK 823, 160 P. 505 . . . . . . . . . . . . . 9
*Smith v. Glanz*, 662 Fed. Appx. 595, 597 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . 9
*Stein v. Disciplinary Bd. of the Supreme Court of New Mexico*,
       520 F.3d 1183 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
*Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
Okla. Const. Art. 7 §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.   **THE DISTRICT COURTS ARE NOT SUBJECT TO
       DISMISSAL UNDER A CLAIM OF ELEVENTH
       AMENDMENT IMMUNITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). . . . . . . . . 10
*Christy v. Pennsylvania Turnpike Commission*, 445 F.3d 227, 229 (3rd Cir. 2006) . . . . . 10
*Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) . . . . . . . . . . . . . 11, 12
*Febrews v. Camden Bd. of Education*, 445 F.3d 227, 229 (3rd Cir. 2006) . . . . . . . . . 10, 11
*Hill v. Kemp*, 478 F.3d 1236, 1256 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*McGirt v. State of Oklahoma*, _____ U.S. _____, 140 S.Ct. 2452,
       207 L.Ed.2d. 985 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ii

*Monell v. Department of Social Services of the City of New York,*
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Murphy v. Royal*, 875 F.3d 896, 904 (10th Cir. 2017) certiorari granted by
    *Royal v. Murphy*, 138 S.Ct. 2026 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Northern Insurance Company v. Chatham County*, 547 U.S. 189, 126 S. Ct. 1689,
    164 L.Ed.2d 367 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. Const. amend I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
U.S. Const. amend. XI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12
U.S. Const. amend XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FRCP 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**IV.**   **THE DISTRICT COURTS CAN BE ENJOINED UNDER §1983** . . . . . . . . . . . . . 13

*Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) . . . . . . . . . . . . . . . . 13
*Monell v. Department of Social Services of the City of New York,*
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**V.**   **THIS COURT SHOULD HEAR THE CLAIMS FOR**
    **DECLARATORY RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*McGirt v. State of Oklahoma*, _____ U.S. _____, 140 S.Ct. 2452,
    207 L.Ed.2d. 985 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
*Murphy v. Royal*, 875 F.3d 896, 904 (10th Cir. 2017) certiorari granted by
    *Royal v. Murphy*, 138 S.Ct. 2026 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**VI.**   **THE GOVERNMENTAL TORT CLAIMS ACT AND THE**
    **FEE PROTEST DO NOT APPLY TO THE CASE AT BAR.** . . . . . . . . . . . . . . . . . .

Fees Protest Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Oklahoma Governmental Tort Claims Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

    **A.**     **The Governmental Tort Claims Act Does Not Apply** . . . . . . . . . . . . . . . . . . . . .

*Sholer v. State ex. rel. Dep't of Pub. Safety*, 945 P.2d 469, 472-73 (Okla. 1995) . . . . . . 15

    **B.**     **The Fee Protest Statute Does Not Apply** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Sholer v. State ex. rel. Dep't of Pub. Safety*, 945 P.2d 469, 472-73 (Okla. 1995) . . . . . . . .

Okla. Const. Art 7 § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**C.**     **Alternative Theory to Recovery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sholer v. State ex. rel. Dep't of Pub. Safety*, 945 P.2d 469, 472-73 (Okla. 1995) . . . . . . 16

**VII.**     **THIS COURT SHOULD EXERCISE SUPPLEMENTAL**
       **JURISDICTION AND ADJUDICATE THE**
       **STATE LAW CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. Const. Art III, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
28 USC § 1311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
28 USC § 1367(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**VIII.**     **PLAINTIFFS ARE NOT REQUIRED TO OBTAIN**
       **POST CONVICTION RELIEF.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cravatt v. State*, 825 P.2d 277, 279 (Okla. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . 17
*Elliott v. Peirsol*, 1 Pet. 328, 340, 7 Led. 164 (1828) . . . . . . . . . . . . . . . . . . . . . . . . . 17
*McGirt v. State of Oklahoma*, _____ U.S. _____, 140 S.Ct. 2452,
       207 L.Ed.2d. 985 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
*Nelson v. Colorado*, 137 S.Ct. 1249, 197 L.Ed.2d 611 (2017) . . . . . . . . . . . . . . . . . . . 18
*Rice v. Olson*, 324 U.S. 786, 789, 65 S.Ct. 989, 991 (1945) . . . . . . . . . . . . . . . . . . . . 17
*Sharp v. Murphy*, 2020 U.S. LEXIS 3551 (U.S. July 9, 2020) . . . . . . . . . . . . . . . . . . . 18
*Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348 (1920) . . . . . . . . . . . . . . . . . 17
*Worcester v. Georgia*, 31 U.S. 515 (1832) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S. Const. amend XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**IX.**     **THE STATE SHOULD BE ESTOPPED FROM DENYING**
       **EITHER THE EXISTENCE OF THE RESERVATIONS OR**
       **THE KNOWLEDGE REGARDING THE EXISTENCE**
       **OF RESERVATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*CIGNA Corp v. Amara*, 563 U.S. 421, 441, 131 S.Ct. 1866 (2011) . . . . . . . . . . . . . . . 20
*McGirt v. State of Oklahoma*, _____ U.S. _____, 140 S.Ct. 2452,
       207 L.Ed.2d. 985 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

25 U.S.C. § 2701 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
70 *Fed.Reg.* No. 67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Eaton § 62 at 176 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

iv

**X.**    <u>**IF THE COURT GRANTS THE DEFENDANTS' MOTION,**</u>
       <u>**THE PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND**</u> . . . . . . . . . . . . .

FRCP 15(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*McGirt v. State of Oklahoma*, _____ U.S. _____, 140 S.Ct. 2452,
       207 L.Ed.2d. 985 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. Const. Amend XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

COME NOW John M. Dunn and Mark D. Lyons, counsel for the Plaintiffs, and for their response to Defendants *The District Court of Nowata County, The District Court of Washington County, The District Court of Delaware County, The District Court of Craig County, The District Court of Mayes County, and The District Court of Rogers County's Motion to Dismiss and Brief in Support* shows the Court as follows:

## INTRODUCTION

With the decision of *McGirt v. State of Oklahoma*, ___ U.S. ___, 140 S.Ct. 2452, 207 L.Ed.2d 985 (2020)*,* the United States Supreme Court pointed out what was clearly the law, ie.- that for more than a century the State of Oklahoma and its political subdivisions have investigated, detained, charged, arrested, imprisoned, fined and otherwise taken large sums of money from Native American people without the authority of law.  The reservation lands of the Cherokee and Creek Indians, contained within their treaty boundaries, were never disestablished by Congress.  Because of that, most of the land in northeastern Oklahoma is still Indian Country as defined by federal statute.  The State does not have jurisdiction over the Plaintiffs if the offenses were committed in "Indian Country."  "Congress has defined Indian country broadly to include three categories of areas: (a) Indian reservations, (b) dependent Indian communities, and (c) Indian allotments.  *See* 18 U.S.C. § 1151." *Murphy v. Royal*, 875 F.3d 896, 904 (10th Cir. 2017), certiorari granted by *Royal v. Murphy*, 138 S.Ct. 2026 (2018).  "All land within the borders of an Indian reservation–regardless of whether the tribe, individual Indians, or non-Indians hold title to a given tract of land–is Indian country unless Congress has disestablished the reservation or diminished its borders." *Id*.  Because the district court Defendants, with the direct participation of their respective court clerks and district attorneys, have illegally applied and enforced criminal laws of the State of Oklahoma upon tribal citizens over which they had no subject matter jurisdiction, the Plaintiffs want back what was taken from them regardless

of the legal theory or theories to get it.  At the very least, the Defendants have been unjustly enriched through their unlawful actions. This lawsuit has been brought by the Plaintiffs on their own behalf, and all others similarly situated, to disgorge the State and its political subdivisions of their ill-gotten gains.

<u>**BRIEF STATEMENT OF FACTS**</u>.

Part of the analysis of this case should start with *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017).  There, the Tenth Circuit Court of Appeals analyzed the treaties and other history concerning the Creek Nation and determined that the Creek Reservation had never been disestablished and therefore remained an Indian Reservation. *Id.* at 966.  The Tenth Circuit made it clear that the Creek Reservation remained "Indian Country" and that the State never had jurisdiction over crimes committed by Indians on that reservation.  *Id.* (See also *Negonsott v. Samuels*, 507 U. S. 99, 102-103, 113 S. Ct. 1119, 122 L. Ed. 2d 457 (1993)). This was not "new law" or a "new interpretation".  It was simply a reminder to the State of Oklahoma of the law it has been ignoring and reaffirmation of what has been the law for over 100 years.  See *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2460 (2020).

The *Murphy* Court also discussed Cherokee specific legislation.  For example, the Cherokee Allotment Agreement of 1902, ch. 1375, 32 Stat. 716, dealt with the allotment of lands in restricted fee, §§ 11 23, 32 Stat. at 717 19; reserved some lands from allotment for named schools, colleges, and other purposes; allowed for any of those "school[s] or college[s] in the Cherokee Nation" to seek additional acreage to be reserved for them, *Id*. § 24, 32 Stat. at 719 20; provided for the creation of a citizenship roll as the basis for allotment, *Id*. §§ 25 31, 32 Stat. at 721 21; created a Cherokee school fund, *Id*. §§ 32 36, 32 Stat. at 721 22; permitted the creation of public roads along section

lines, *Id*. § 37, 32 Stat. at 722; provided for the establishment of townsites, *Id*. §§ 38 57, 32 Stat. at 722 25, "in the Cherokee Nation," *Id*. §§ 48 49, 32 Stat. at 724; and provided for the issuance of titles to the allotments, Id. §§ 58 62, 32 Stat. at 725.  The Agreement also provided that the Cherokee government would be abolished effective March 4, 1906, but this provision was suspended by the Five Tribes Act.  Like the Creek Allotment Agreement and Supplemental Agreement addressed in *Murphy*, the Cherokee allotment laws did not disestablish the Cherokee Nation's reservation.

These treaties that established the Cherokee Reservation take on a Constitutional Dimension under the Supremacy Clause of the United States Constitution as "the Supreme Law of the Land ". See Article VI, §2.  From the creation of Oklahoma statehood to the present, the State of Oklahoma and the Defendants in this case have nonetheless continued to arrest, fine and assess fees against Indians for crimes committed on the reservations despite the total lack of subject matter jurisdiction and authority to do so.

Following *McGirt*, the Plaintiffs initiated this action seeking a return and disgorgement of the monies paid to the state and its political subdivisions by Indians which were collected at the point of a government gavel without lawful authority.  Based upon laws passed by Congress, the *McGirt* decision and cases proceeding it, each of the convictions of the named Plaintiffs and others who qualify for inclusion in the class, should be declared *void ab inito*.  Despite the misstatements of the Defendants to the contrary, the purpose of this action is to require the Defendants to disgorge their ill gotten and wrongly obtained monies paid to the Defendants by Indians as fines and fees for crimes committed on the Cherokee Indian Reservation.  This is not an action seeking to recover restitution. This is not an action seeking to recover from an intentional or negligent tort.

3

In response, the district court Defendants are invoking legal and equitable defenses to their illegal assertion of subject matter jurisdiction over Indians in Indian country and the taking of their money.  The Defendants also claim the Plaintiffs cannot identify who has the money now and where it was sent after the Defendants took it.  They further seek to avoid further payment asserting that the exact amount is not known at this time - ignoring the fact that once the class is completely identified, this number is easily determinable.

## ARGUMENT AND AUTHORITIES

I. **THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM SHOULD BE DENIED AS THE PLAINTIFFS HAVE COMPLIED WITH STATUTORY AND CASE LAW PLEADING REQUIREMENTS.**

"All well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party."  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997).  "A 12(b)(6) motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id*. (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991).

As this Court is undoubtedly aware, the Federal Rules of Civil Procedure are a relaxed standard of pleading markedly different from previous "fact pleading".  The purpose of federal pleading rules is to keep litigants ***in court***, not out of court.

Under the relaxed pleading standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in. The merits of a claim would be sorted out during a flexible pretrial process and, as appropriate, through the crucible of trial. See *Swierkiewicz*, 534 U.S., at 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim"). Charles E. Clark, the "principal draftsman" of the Federal Rules, put it thus:

> "Experience has shown . . . that we cannot expect the proof of the case to be made through the pleadings, and that such proof is really not their function. We can expect a general statement distinguishing the case from all others, so that the manner and form of trial and remedy expected are clear, and so that a permanent judgment will result." The New Federal Rules of Civil Procedure: The Last Phase--Underlying Philosophy Embodied in Some of the Basic Provisions of the New Procedure, 23 A. B. A. J. 976, 977 (1937) (hereinafter Clark, New Federal Rules).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 575, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Defendants have argued the *Twombly* decision requires fact pleading with allegations that are "more than labels and conclusion and a formulaic recitation of the elements of a cause of action". *Twombly's* holding, for those statements of law, was describing claims brought under the Sherman Antitrust Act. *Id*., at p. 554-555. "In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id*., at p. 557.

The Defendants' claim an analysis of a complaint for an FRCP 12(b)(6) motion, for a subject matter jurisdictional analysis only, is either a "facial attack" or "factual attack" requiring a Court to

consider facts plead and proven in support of the complaint.  This "analysis" is in a footnote found in *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148, fn.4 (10th Cir. 2015).  The Defendants have not argued this Court lacks subject matter jurisdiction.  Any request this Court should subject the complaint filed herein, to fact based proof at the pleading stage, is analytically, intellectually, factually and legally wrong.

Even if this Court applies a more rigid *Twombly* pleading standard to the complaint other than notice pleading, the complaint is more than adequate.  This case is analytically simple.  Based on the *McGirt* and *Murphy* decisions, the Plaintiffs have sued asking this Court for relief on behalf of Indian tribal members who have been illegally subjugated to Oklahoma criminal laws and been forced to pay untold hundreds of thousands or more of dollars for court costs, probation fees, district attorney supervision fees, etc., under threat of going to jail if the monies are not paid.

The factual basis common to all ultimate claimants are found in ¶¶ 53-58 of the complaint. These paragraphs state with specificity that the district attorneys and state district courts have systematically prosecuted "members of a federal recognized American Indian tribe for crimes committed on the Cherokee Reservation", and that only the federal government or the Cherokee Nation have subject matter jurisdiction over such prosecutions.  It is further alleged that in the recent United States Supreme Court decision of *McGirt v. Oklahoma*, ___ U.S. ___, 140 S.Ct. 2452, 207 L.Ed.2d 985 (2020), the court reiterated that Congress had never disestablished the boundaries of the Cherokee Nation and that because Indian country still existed, the State of Oklahoma did not have subject matter jurisdiction over Indians for criminal prosecutions in Indian country.

The Complaint further alleges in ¶¶ 59-65 that the specifically named Plaintiffs were illegally prosecuted, convicted and paid court costs and fines for Oklahoma state law crimes in the Cherokee

6

Nation reservation area, which is Indian Country, and over which only the federal government or the Cherokee Nation, have exclusive criminal law subject matter jurisdiction.  The exact cases numbers for each court, the crimes charged and for which the Plaintiffs were convicted, are specifically plead.

The Complaint specifically alleges in ¶¶ 1-49 how the district attorneys, court clerks and other defendants systematically enforced Oklahoma state criminal laws against the named Plaintiffs (and other putative class members), over which the Defendants had no subject matter jurisdiction.

The complaint has enough factual specificity to meet the *Twombly* requirements to describe the constitutional violations and claims for relief.  There are not conclusory nor formulaic allegations made.  That part of the Defendants' motion to dismiss, based on an FRCP 12(b)(6) claim the complaint fails to state a claim for relief, should be denied.

II.    **ALL THE COURT CLERKS AND DISTRICT COURTS ARE PROPER PARTIES TO THIS CASE AND ALL HAVE BEEN PROPERLY SERVED WITH THE COMPLAINT AND SUMMONS.**

It is a fundamental rule of 42 USC §1983 law that all persons involved, or who set in motion a series of acts that results in a deprivation of ones rights, has liability whether or not they directly participated.  *Miller v. City of Mission, Kansas*, 705 F.2d 368, 375 (10th Cir., 1983), citing to *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979).

> A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.  Moreover, personal participation is not the only predicate for section 1983 liability.  Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows, or

7

reasonably should know, would cause others to inflict the unconstitutional injury.

In the instant case, the starting point for the illegal acts is either a district court or a district attorney.  Whether a district court first gets involved by setting bail for a person arrested without a warrant, or whether a district attorney gets involved by the formal filing of a criminal charge and asking a district court to set bail, the result is still the same.  The legal process of illegally asserting jurisdiction and authority over tribal citizens, for crimes committed in Indian country, occurred by virtue of the power vested in the district court and district attorneys.  There is no single judge or person responsible.  It is the exercise of the power of a district court that caused the deprivation of rights and the State to engorge itself on the ill gotten proceeds of the tribal members over which the courts had no subject matter jurisdiction.

A.     As is discussed in more detail in responses to motion to dismiss on behalf of court clerks, a Clerk is a Person Capable of Being Sued in Federal Court.

The Defendants admit that the Clerks were served with the complaint and a summons at the clerks' business addresses for themselves, and on behalf of the district courts they serve.  They don't deny receiving notice of the lawsuit and they have obviously responded. While the Defendants argue service of process was improper, they don't refer to a statute nor case law for who they claim should be served.  The improper service argument is intertwined with a claim a court and court clerk are not political subdivisions capable of being sued.  That is not the sole issue.  The issue is whether or not a court clerk and court are "persons" subject to being sued for §1983 and federal court jurisdictional purposes.

Multliple cases find that court clerks are "persons" that can be sued in federal court.  See *Stein v. Disciplinary Bd. of the Supreme Court of New Mexico*, 520 F.3d 1183 (10th Cir., 2008),

8

*Bishop v. United States ex. rel. Holder*, 962 F.Supp.2d 1252 (N.D. Okla., 2014), and *Smith v. Glanz*, 662 Fed. Appx. 595, (10th Cir. 2016). *Glanz* further holds, "'The Supreme Court of the United States has long held that judges are generally immune from suits for money damages.' *Stein v. Disciplinary Bd. of Supreme Ct. of N.M.*, 520 F.3d 1183, 1195 (10th Cir. 2008). 'There are only two exceptions to this rule: (1) when the act is not taken in the judge's judicial capacity; and (2) when the act, though judicial in nature, **is taken in the complete absence of all jurisdiction**.' *Id*." (emph. added)

The instant lawsuit is not against particular named judges, but against the office of the district court, in which they serve and function and alleges the entire court system of filing charges, issuing arrest warrants, prosecuting defendants, ordering the payments of monies[1] under threat of arrest and imprisonment for the failure to do so, and collecting of the fees. All these acts occurred in the "complete absence of all jurisdiction".

Judges occupy a position in the district court system created by Oklahoma law. Art. 7, §1 of the Oklahoma Constitution reads (in relevant part), "The judicial power of this State shall be vested in . . . District Courts . . ." The power is not vested in a particular judge. A judge only carries out the power vested in the office of a district court. "Municipal Courts in cities or incorporated towns shall continue in effect and shall be subject to creation, abolition or alteration by the Legislature by general laws, but shall be limited in jurisdiction to criminal and traffic proceedings arising out of infractions of the provisions of ordinances of cities and towns or of duly adopted regulations authorized by such ordinances." *Id*. *Roth v. Union National Bank of Bartlesville*, 1916 OK 823, ¶ 15, 160 P. 505 holds, "Jurisdiction is the authority to hear and determine; and in order that

---

[1] The list seems endless and includes, but is not limited to, fines, court costs, DA supervision fees, victim compensation assessments, mental health assessments, lab fees, restitution, court fund assessments, probation fees, ¶ 991 fees, etc.

it may exist the following are essential: (1) A court created by law, organized and sitting; . . ." Therefore a district court is an entity that exists without regard to the person occupying the position of judge.  It is the existence of a district court that allows a judge exercise power, to hear cases and render decisions as a judge of the district court.  This Court has jurisdiction.

### III.     THE DISTRICT COURTS ARE NOT SUBJECT TO DISMISSAL UNDER A CLAIM OF ELEVENTH AMENDMENT IMMUNITY.

"'Eleventh Amendment immunity' . . . is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."  *Alden v. Maine*, 527 U.S.706, 713, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999).  "[t]he Supreme Court has long held that counties, municipalities, and political subdivisions of a state are not protected by the Eleventh Amendment."  *Febres v. Camden Bd. of Education*, 445 F.3d 227, 229 (3d Cir. 2006).  The party asserting Eleventh Amendment immunity "bears the burden of proving its applicability."  *Christy v. Pennsylvania Turnpike Commission*, 54 F.3d 1140, 1144 (3d Cir. 1995).  The Fourteenth Amendment gives a federal court jurisdiction to enforce a constitutional right only as against state, not private, action.  *Hill v. Kemp*, 478 F.3d 1236, 1256 (10th Cir. 2007).

In *Hill*, certain taxpayers and motorists sued the State of Oklahoma in federal court claiming the state speciality license tag system that allowed anti-abortion/family friendly license plates[2], but no tags promoting abortions or family planning were allowed.  The 10th Circuit, Justice Gorsuch, held that claims 5 and 6 (which sought prospective relief challenging the method by which license tag fees were distributed for the perceived anti-abortion license tags to counseling for anti-abortion activities and the Plaintiffs claimed 1st and 14th Amendment violations it was denied funding based

---

[2] The tags were "Adoption Creates Families" and "Choose Life".

10

on a statutory restriction preventing the disbursement of program funds to organizations that are also "associated with any abortion activities") could not be dismissed on an FRCP 12(b)(6) motion due to the relief sought.[3]

*Northern Insurance Company v. Chatham County*, 547 U.S. 189, 126 S. Ct. 1689, 164 L. Ed. 2d 367 (2006) found that a county was not an arm or the State in its operation of a draw bridge and therefore 11th Amendment immunity did not apply.

In *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), the Court held that the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself. It singled out the distinction between Federal jurisdiction to enjoin the acts of a court and the power to enjoin an individual from doing certain things. In finding there was no 11th Amendment immunity and the federal court had jurisdiction over the state office, the Supreme Court held:

> The answer to all this is the same as made in every case where an official claims to be acting under the authority of the State. The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which

---

[3] "Given all this, we are unable to conclude, as defendants would have us, that the relief ORC seeks represents an impermissible form of relief under our received Eleventh Amendment jurisprudence. Of course, at this stage we are confronted [*1262] only with a motion to dismiss and thus have taken plaintiff's pleadings as true for purposes of our analysis, drawing all inferences in ORC's favor. We offer no comment on whether the ORC will ultimately be able to prove that Oklahoma's statutory scheme is constitutionally [**73] infirm. See Verizon Md., 535 U.S. at 646 (HN32 "[T]he inquiry into whether suit lies under Ex parte Young does not include an analysis of the merits of the claim.")." *Id.*, at 1261-62.

11

the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States. See *In re Ayers*, *supra*, page 507. It would be an injury to complainant to harass it with a multiplicity of suits or litigation generally in an endeavor to enforce penalties under an unconstitutional enactment, and to prevent it ought to be within the jurisdiction of a court of equity. If the question of unconstitutionality with reference, at least, to the Federal Constitution be first raised in a Federal court that court, as we think is shown by the authorities cited hereafter, has the right to decide it to the exclusion of all other courts.

*Id*., at 209 U.S. 159-160. This case further holds:

The various authorities we have referred to furnish ample justification for the assertion that individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

*Id*., at p. 155-156.

Under the *Young* doctrine, this Court does not affect 11th Amendment immunity by accepting jurisdiction and righting the wrongs perpetrated upon Indian tribal members. As noted in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, the touchstone for suits for monetary, declaratory or injunctive relief "against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution". *Id*., at p. 690. "'Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized

12

by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Id*.

It is not a jurisdictional, analytical nor idealogical stretch for this Court to deny the motion to dismiss. This Court is the only proper one to enforce the Supreme Court holdings of *McGirt* and *Murphy* as the State courts cannot be trusted to do so.

**IV.    THE DISTRICT COURTS CAN BE ENJOINED UNDER §1983.**

As noted in *Young* and *Monell, supra*, injunctive relief is available in this case. *Young* allows it in response to 11th Amendment claims and *Monell* allows it under §1983 claims. It is particularly important in this case that there be one court that makes findings pursuant to *McGirt* and *Murphy* rather than having to rely for a uniform decision from the six district courts, four district attorneys, seven court clerks and twenty municipal court defendants. The motion to dismiss should be denied.

**V.    THIS COURT SHOULD HEAR THE CLAIMS FOR DECLARATORY RELIEF.**

The Defendants mischaracterizes the relief sought in an effort to persuade the Court to take no action. The Plaintiffs are not seeking a declaration that would establish liability. Rather, the Plaintiffs are seeking a ruling that would require the Defendants to disgorge monies wrongly taken from those over whom they lacked subject matter jurisdiction. This is not a "retroactive" ruling, it is merely seeking that the Court confirm what is over a century old body of law the Supreme Court reaffirmed in *McGirt*. The future conduct that is sought to be modified, is the continued prosecution of Indians on the Cherokee Reservation. That conduct not only continues, but is likely to continue until there is a ruling from a Federal Court.

Plaintiffs direct the Court to the Plaintiffs Response to *Defendants Kevin Burchanan, Kenny Wright, Matt Ballard, and Steve Kunzweiler's Motion to Dismiss and Brief in Support* . There,

13

Defendants tell the Court that the State Courts are endeavoring to resolve this issue. Plaintiffs restate the response arguments here. It is important to note that as this brief is being submitted, the Oklahoma Attorney General has circulated a memorandum requesting that all cases dealing with the Cherokee Reservation be put on hold while they try to find a way around *McGirt*. This is not a subject that the State has a history of dealing with competently before. One only need to read the *McGirt* opinion by Gorsuch to fully understand the lack of understanding that the State has with regard to this subject matter and the lengths that it will go to in order to preserve its power and retain the monies that have been taken. In seeing how the 10th Circuit dealt with the Oklahoma Court of Criminal Appeals in *Murphy,* it is obvious its record is no better.

The best way to obtain the correct answer would be for this Court to do what will either be done now or later in a Habeas Petition - enter a Declaratory Judgment interpreting the treaties and case law affecting the Cherokee Reservation and find that the Cherokee Reservation has never been disestablished.

## VI. THE GOVERNMENTAL TORT CLAIMS ACT AND THE FEE PROTEST ACT DO NOT APPLY TO THE CASE AT BAR.

The Defendants next raise the twin complaints that other provisions of law apply. Specifically, the Defendants claim that the Plaintiffs have failed to comply with the Oklahoma Governmental Tort Claims Act (OGTCA) and the Fees Protest Act. However, these matters have been resolved with regards of cases like this one by the Oklahoma Supreme Court.

### A.    The Governmental Tort Claims Act does not apply.

The Defendants further claim that the Governmental Tort Claims Act prevents this disgorgement without going through the statutory hurdles. However, the Oklahoma Supreme Court has already addressed this issue and found that disgorgement does not fall in the realm of tort.

> Again, appellees are not seeking compensation for a loss caused by the state. Instead, they seek a refund of the amount overpaid for license reinstatement. Their action is one for money had and received. As such, the GTCA provides no bar to their action. Appellees were not required to comply with the claims procedure provided in the Act.

*Sholer v. State ex rel. Dep't of Pub. Safety*, 945 P.2d 469, 472-73 (Okla. 1995)

### B.     The Fee Protest statute does not apply.

The District Court Defendants further argue that Plaintiffs should avail themselves of the fee protest statute and the failure to do so creates a bar to them being allowed to proceed. Again, this argument has already been addressed by the Oklahoma Supreme Court.

> We do not view the statute as an impediment to the District Court's exercise of jurisdiction. Okla. Const.Art. 7 § 7. However, even if it were otherwise, the statute, as explained below, would not be a bar to recovery.

> Appellees (the drivers who were charged multiple reinstatement fees) correctly assert that they were not required to follow Section 206, because they were not claiming a fee to be unconstitutional or invalid. They do not dispute the validity of reinstatement fees. Rather, they dispute only the accounting practices of the DPS in requiring the payment of multiple reinstatement fees. Appellees do not challenge the statute under which the fees are paid. In fact, they rely on the statute and its validity in asserting that the statute permits the collection of only one fee.

*Sholer v. State ex rel. Dep't of Pub. Safety*, 1995 OK 152, ¶¶ 1-3, 945 P.2d 469, 478.

Like the plaintiffs in *Sholer*, the Plaintiffs in this case are merely seeking disgorgement of monies paid for which the Defendants had no authority to force the Plaintiffs to pay, especially at

the risk of imprisonment for failing to do so.  Had the above named Plaintiffs been prosecuted in tribal court, as they should have been, no disgorgement would be due and the Court could have properly considered their cases.

      **C.**    **Alternative theory to recovery.**

In the dissenting opinion of *Sholer*, Justice Lavender opined that the better cause of action against the state would be an unjust enrichment claim, which may have the effect of enlarging the period of time for which plaintiffs could recover and affect the number of plaintiffs that would be eligible for this disgorge.

> Although I agree with the result reached by the court's pronouncement, I recede from the court's decision that three years is the applicable limitation period.  While I would allow the plaintiffs' action to prevent the State's unjust enrichment, I would hold that the common-law principles which undergird their claims lie in the substantive law of restitution.  Although quasi-contractual precepts are a part of the common law of restitution, not all restitutionary actions are properly classified as contractual in nature.

*Sholer v. State ex rel. Dep't of Pub. Safety*, 1995 OK 152, ¶ 6, 945 P.2d 469, 479

## VII.   THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION AND ADJUDICATE THE STATE LAW CLAIMS

In order to be successful in Proposition VI, the Defendants must first convince the Court to dismiss the remaining federal claims, which not only includes the § 1983 claims, but also the inherent question of interpretation of treaties - which is necessary to adjudicating whether the Cherokee Nation has been disestablished.  "The judicial power of the United States shall extend to all cases, in law and equity, arising under the Laws of the United States, and Treaties made under their authority...."  United States Constitution, Art. III, Sec. 2.  See also 28 USC § 1311  It is inescapable that even if the Court were to dismiss the claims under Section 1983, there is inherent

jurisdiction of the Federal Court because of the necessity to interpret the treaties between the United

States and the Cherokee Indian Tribe.  In order to afford complete relief, it is essential that the Court

exercise supplemental jurisdiction. When the Court has original jurisdiction, the court shall have

supplemental jurisdiction over all other claims that are so related to claims in the action with such

original jurisdiction that they form part of the same case or controversy under Article III of the

United States Constitution. 28 USC § 1367(a)

## VIII.   PLAINTIFFS ARE NOT REQUIRED TO OBTAIN POST CONVICTION RELIEF.

The Defendants assert the Plaintiffs are required to individually pursue Post Conviction

Relief in order to vacate their conviction to then obtain a recovery.  This makes no sense when the

United States Supreme Court has already ruled that if the Plaintiff's crimes occurred in Indian

Country and the Plaintiff was an "Indian" the state would have no jurisdiction.  This has long been

the case.  See *Cravatt v. State*, 825 P.2d 277, 279 (Okla. Crim. App. 1992),  *Rice v. Olson*, 324 U.S.

786, 789, 65 S. Ct. 989, 991 (1945) (citing *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515 (1832)).  It

is settled law that a result from a case in which a court acts outside its subject matter jurisdiction are

void *ab initio* and are so even if no appeal is taken.  As early as 1828, the U.S. Supreme Court has

observed that

> Courts are constituted by authority and they cannot beyond the power
> delegated to them. If they act beyond that authority, and certainly in
> contravention of it, their judgments and orders are regarded as nullities.  They
> are not voidable, but simply void, *and this even prior to reversal*.

*Valley v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348 (1920), citing *Elliott v. Peirsol*, 1 Pet. 328,

340, 7 Led. 164 (1828).

17

It is uncontested that *McGirt* ruled the Oklahoma court lacked subject matter jurisdiction over the petitioner's cases because it was a Major Crime alleged to have occurred by an Indian in Indian Country.  It is an admitted fact, because the Defendants have not tried to deny it, the Plaintiffs and Class Members are (or will be limited to) members of a federally recognized tribe(s).  Their crimianl convictions undeniably occurred through the acts of the district courts for which there was no subject matter jurisdiction.  This Court should declare all such convictions void *ab initio*, and not subject all the similarly situated plaintiffs to run the gauntlet and vagaries of every district and municipal court process when then this Court can declare the result once and for all.  Arguably, post-conviction relief is not a remedy as there is no valid conviction to set aside.  The mind set of State officials is irrelevant to this analysis. Here, the United States Supreme Court has affirmed *Murphy*, (*Sharp v. Murphy*, 2020 U.S. LEXIS 3551 (U.S., July 9, 2020)) which held that the Creek Reservation is Indian Land and therefore the State has no jurisdiction over crimes committed by Indians on the reservation.  Any conviction had is *void ab initio*, there is no conviction to address through post conviction relief to achieve the ends sought.

The Plaintiffs believe the law is settled they do not have to individually apply for and be granted post-conviction relief instead of pursuing the instant case.  *Nelson v. Colorado*, 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017) does not required post conviction relief to achieve a disgorgement of ill gotten fines and fees.  In *Nelson*, the Petitioners had already obtained post conviction relief, but the state required a separate action be filed requiring the Petitioners to prove their actual innocence by clear and convincing evidence.  The Court found that this offended the Fourteenth Amendment's guarantee of due process because it forced the.  *Id*. at 1255.

18

However, *Nelson* provides an analysis for evaluating the case at bar.  The Court in *Nelson* used the *Mathews* balancing test to determine if the money should be returned.  This test requires the court to evaluate, (A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake.  *Nelson*, 137 S. Ct. at 1255.  All three considerations weigh decisively against the District Court Defendants' position.  As in *Nelson*, the members of the Plaintiff class have an interest in regaining their money.  Because the U.S. Supreme Court and the 10th Circuit Court of Appeals have determined that any convictions of the class members are *void ab initio* due to a lack of subject matter jurisdiction, there is not further corrective procedure required.  With regard to the third factor, the Supreme Court said, [the District Court Defendants] have no valid interest in withholding from [Plaintiffs] money to which the State currently has zero claim of right. 137 S. Ct. at 1257.

Post Conviction Relief is not required in the instant matter.  The Plaintiffs do not seek to have the their records changed to reflect that they have not received a conviction as a predicate to seeking disgorgement of wrongly taken monies.  Rather the Plaintiff class demand disgorgement of the monies that have been paid pursuant to judgments that are *void ab initio* as a result of a lack of jurisdiction of the courts of this state or its political subdivisions.

IX.  **THE STATE SHOULD BE ESTOPPED FROM DENYING EITHER THE EXISTENCE OF THE RESERVATIONS OR THE KNOWLEDGE REGARDING THE EXISTENCE OF RESERVATIONS**

The District Court Defendants previously sought to invoke the powers of Equity.  In return, the Plaintiffs would assert that the Defendants are barred from claiming that prior to *McGirt*, it was operating under a reasonable mistake of law in its improper prosecution of tribal members because of equitable estopple.  Equitable estoppel "operates to place the person entitled to its benefit in the

19

same position he would have been in had the representations been true." Eaton § 62, at 176. And, as Justice Story long ago pointed out, equitable estoppel "forms a very essential element in . . . fair dealing, and rebuke of all fraudulent misrepresentation, which it is the boast of courts of equity constantly to promote." 2 Story § 1533, at 776. *CIGNA Corp. v. Amara*, 563 U.S. 421, 441, 131 S. Ct. 1866, 1880 (2011) The actions of the State in dealing with the Muscogee (Creek) Nation in various gaming issues demonstrate clearly that the State was aware of its dealing with a tribal sovereign. As a result, it cannot now claim ignorance of that sovereignty with respect to criminal prosecutions of Indians within Indian Country.

State of Oklahoma agreements with the various Oklahoma Indian tribes negotiating and agreeing to gaming compacts demonstrates that Oklahoma government officials knew it had to recognized their sovereignty. The State acknowledges the tribes' sovereignty in these agreements.

In 1988, the US Congress enacted the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.,* with an intent to (*inter alia*) "provide a statutory basis for the operation of gaming by *Indian tribes* as a means of promoting tribal economic development, self-sufficient, and strong tribal governments." 25 U.S.C. § 2702(1) (*emphasis added*). The IGRA regulatory framework outlines the circumstances of which different classes of gaming are allowed by tribes. Specifically, the IGRA allows for gaming on "Indian Lands" which are defined as:

> (4) The term "Indian lands" means –
> (A) all lands within the limits of any *Indian reservation*; and
> (B) any lands title to which is either held in trust by the United States for the benefit of any *Indian tribe* or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. §2703(4)(A) and (B) (*emphasis added*).

*McGirt* ruled that the boundaries of the Muscogee (Creek) Nation were a reservation for purposes of federal law.  However, tribal gaming existed in Oklahoma pre-*McGirt*, with the State entering into a gaming compact with the Muscogee (Creek) nation in 2005.  (See, *infra*, <u>Letter from U.S. Department of Interior to Honorable A.D. Ellis</u>).  Therefore, the State was behaving as if the Muscogee (Creek) Nation was "Indian lands" within the meaning of 25 U.S.C. §2703(4).  As a result, Oklahoma was dealing with the tribe as if it were either an Indian reservation itself (§2703(4)(A)) or held land in trust by the United States for the benefit of an *Indian tribe* (§2703(4)(B), *emphasis added*).  Either way, the State cannot make a colorable that it was proceeding under a mistaken understanding that the Muscogee (Creek) Nation could not have had jurisdiction for non-major crimes.

Not only did Oklahoma act as if it were negotiating gaming compacts with an Indian tribe, it expressly acknowledged the sovereignty of the Muscogee (Creek) Nation in agreeing to the compact.  In a letter dated March 16, 2005, the U.S. Department of Interior published an approval of the gaming compact agreed to by the State of Oklahoma and the Muscogee (Creek) Nation, with a formal approval appearing in the Federal Register.  70 *Fed. Reg*. No. 67, p. 18041.  In the compact which was approved, Oklahoma agreed to several recitals which manifest a recognition of the tribal sovereignty and jurisdiction, *viz.*

Part 2. RECITALS

1.  The tribe is a federally recognized tribal government possessing sovereign powers and right of self-governance
…
3. The state and the tribe maintain a government-to-government relationship.
4. The United States Supreme Court has long recognized the right of an Indian tribe to regulate activity on lands within its jurisdiction.

21

Letter from U.S. Department of Interior to Honorable A.D. Ellis, dated March 16, 2005. https://www.bia.gov/sites/bia.gov/files/assets/as-ia/oig/oig/pdf/idc-038435.pdf

Therefore, it is clear that the State of Oklahoma treated the Muscogee (Creek) Nation as a sovereign tribal sovereign possessing jurisdictional authority when it agreed to share revenues from casinos.  Yet now, the State seems to oblivious to this when it comes to recognition of tribal sovereignty with respect to criminal law.

**X.     IF THE COURT GRANTS THE DEFENDANTS' MOTION, THE PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND.**

In the event this Court were to grant the Defendants' motion to dismiss, the Plaintiffs pray to be granted leave to amend the *Complaint* in order to state a claim based upon the orders of the court. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." USCS Fed Rules Civ Proc R 15(a)(2).

## CONCLUSION

The 14th Amendment to the United States Constitution prohibits a State from depriving persons of money or property without due process of law.  It reads in relevant part, ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  There can be no doubt that the court proceedings instituted by district courts and district attorneys against tribal members, for crimes alleged to have been committed in Indian country, is the exact kind of deprivation proscribed by the 14th Amendment.  The State cannot knowingly and illegally profit from its activities for more than a century and then bitterly complain about the consequences of doing so.  That would be like Lizzie Borden complaining about being an orphan.

22

The law should always provide a remedy for a wrong and a court for redress of the wrong. This case is based on provable evidence the Plaintiffs, and members of Plaintiffs' class, being criminally prosecuted, without subject matter jurisdiction for the courts to do so.  Based on the holding in *McGirt*, each of those convictions is *void ab initio* because neither the State of Oklahoma nor any of its political subdivisions have jurisdiction over these kinds of crimes. Based on the argument above, this court should deny Defendant's Motion to Dismiss.

Respectfully submitted,

/s/ Mark D. Lyons
Mark D. Lyons, OBA #5590
LYONS & CLARK, INC.
616 S. Main, Suite 201
Tulsa, OK 74119
(918) 599-8844 Telephone
(918) 599-8585 Facsimile
lyonscla@swbell.net

and

John M. Dunn, OBA #20975
The Law Offices of John M. Dunn, PLLC
616 S. Main, Suite 206
Tulsa, OK 74119
(918) 526-8000 Telephone
(918) 359-5050 Facsimile
jmdunn@johndunnlaw.com
**Attorneys for Plaintiffs**

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of October, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing and transmittal of Notice of Electronic Filing to all counsel of record as set forth below:

| | |
|---|---|
| Keith A Wilkes | kwilkes@hallestill.com |
| Christopher Collins | cjc@czwlaw.com |
| Jamison Whitson | jcw@czwlaw.com |
| Wellon Poe, Jr. | bp@czwlaw.com |
| Stephen Geries | sig@czwlaw.com |
| Thomas LeBlanc | leblanc@bestsharp.com |
| Michael Shouse | mshouse@tulsacounty.org |
| Andrew W. Lester | alester@spencerfane.com |
| Courtney D. Powell | cpowell@spencerfane.com |
| Anthony J. Ferate | ajferate@spencerfane.com |
| Douglas Wilson | douglas.wilson@tulsacounty.org |
| Erin M. Moore | erin.moore@oag.ok.gov |
| Stephanie E. Lawson | stephanie.lawson@oag.ok.gov |
| Jacqueline R. Zamarripa | jackie.zamarripa@oag.ok.gov |
| Randall J. Yates | randall.yates@oag.ok.gov |

/s/ Mark D. Lyons

24