# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Tayleur Raye Pickup, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-00346-JB-JFJ |
| | ) | |
| District Court of Nowata County, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION AND OPENING MEMORANDUM IN SUPPORT OF LEAVE TO FILE BRIEF OF *AMICI CURIAE* CHEROKEE NATION, CHICKASAW NATION, CHOCTAW NATION OF OKLAHOMA, MUSCOGEE (CREEK) NATION, QUAPAW NATION, AND SEMINOLE NATION OF OKLAHOMA IN SUPPORT OF PLAINTIFFS' OPPOSITIONS TO THE CURTIS ACT ARGUMENTS RAISED IN DEFENDANT MUNICIPALITIES' MOTIONS TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 7 and Local Rule 7-1, Movants the Cherokee Nation, Chickasaw Nation, Choctaw Nation of Oklahoma, Muscogee (Creek) Nation, Quapaw Nation, and Seminole Nation of Oklahoma (collectively, "Nations"), respectfully request that the Court exercise its inherent authority and discretion to grant them leave to file the attached amicus brief ("*Amicus* Br.") in the above-captioned case, in support of Plaintiffs on the single issue of whether municipalities have jurisdiction over Indians in Indian Country under Section 14 of the Curtis Act of 1898, ch. 517, 30 Stat. 495, 499-500 ("Section 14"). This amicus brief provides information to the Court that will assist it in resolving the Rule 12(b)(6) arguments made by Defendant Municipalities[1] in their motions to dismiss, ECF Nos. 27, 87, and certain of their notices of supplemental authority, ECF Nos. 133, 135, that municipalities in eastern Oklahoma have jurisdiction over Indians in Indian country under Section 14. The Nations submit this brief as part of their effort to provide helpful information to the courts as they consider municipalities' recent claims of authority under Section 14. *See* Br. of *Amici Curiae* Cherokee Nation, et al., in Supp. of Appellant & Supp'g Reversal, *Hooper v. City of Tulsa*, No. 22-5034 (10th Cir. filed July 7, 2022), Doc. No. 010110707522. Counsel for Plaintiffs consent to the filing of the attached amicus brief. Counsel for all Defendants have stated that they oppose leave to file.

## ARGUMENT

The Nations' motion should be granted under this district's standards for determining whether to allow the filing of an amicus brief. "Federal courts have discretion in allowing participation as amicus curiae," *N.M. Oncology & Hematology Consultants, Ltd. V. Presbyterian*

---

[1] Namely, Defendants Towns of Adair, Big Cabin, Bluejacket, Chelsea, Chouteau, Copan, Disney, Kansas, Langley, Locust Grove, Oologah, Ramona, Salina, South Coffeyville, Spavinaw, Strang, Talala, Verdigris, Warner, and West Siloam Springs, and Cities of Bartlesville, Catoosa, Claremore, Collinsville, Dewey, Grove, Jay, Nowata, Owasso, Pryor, and Vinita.

1

*Health Servs.*, 994 F.3d 1166, 1175 (10th Cir. 2021) (citing *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)), which should be allowed when an amicus has expertise in an area of law that will aid the court, *see Legacy Church, Inc. v. Kunkel*, 472 F. Supp. 3d 926, 936 (D.N.M. 2020) (Browning, J.), *aff'd sub nom. Legacy Church, Inc. v. Collins*, 853 F. App'x 316 (10th Cir. 2021). Judge Frizzell of this district has opined that "[p]articipation as an amicus to brief and argue as a friend of the court is a privilege within the sound discretion of the court, depending upon a finding that the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice." *JPMorgan Chase Bank, N.A. v. Fletcher*, No. 06-CV-624-GKF-SAJ, 2008 WL 73233, at *1 (N.D. Okla. Jan. 7, 2008) (citing *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991)).

> As Judge Frizzell explained further in *JPMorgan Chase*,
>
> An amicus brief should normally be allowed . . . when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.

*Id.* (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, C.J., in chambers)). In contrast, "[a]micus briefs filed by allies of litigants which duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief, are an abuse and should not be allowed." *Id.* (citing *Ryan*, 125 F.3d at 1063); *accord Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2008 WL 1994914, at *1 (N.D. Okla. May 5, 2008) (Frizzell, J.).

Leave should normally be granted when the *JPMorgan* factors are met. *See Bishop v. Smith*, 112 F. Supp. 3d 1231, 1245 (N.D. Okla. 2015) (judges in this District and the Tenth Circuit have never "expressed hostility toward amicus briefs"). That is consistent with the approach in

most other courts. *See, e.g.*, *Neonatology Assocs., P.A. v. CIR*, 293 F.3d 128, 132-33 (3d Cir. 2002) (Alito, J.) (discussing policy behind granting amicus participation and granting participation under Fed. R. App. P. 29 where "amici have stated an 'interest in the case,' and it appears that their brief is 'relevant' and 'desirable' since it alerts the merits panel to possible implications of the appeal"); *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 138 (D.D.C. 2008) (granting amicus leave to file to help resolve "significant legal issues"); *Cmty. Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975-76 (E.D. Wash. 1999) (granting leave to file "on the eve of summary judgment motions" because "Petitioners are in a position to provide unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide").

The Nations' motion should be granted here for two such reasons. First, the Nations have interests in cases that may be affected by the decision in the present case. The Nations exercise Treaty-protected powers of self-government over their Reservations, which are Indian country under federal law, 18 U.S.C. § 1151(a), and exercise criminal jurisdiction over all Indians in Indian country under their inherent authority, as recognized by federal statute, 25 U.S.C. § 1301(2); *United States v. Lara*, 541 U.S. 193, 210 (2008). They therefore have an interest in the enforcement of criminal laws against their citizens and other Indians on their Reservations. That interest is threatened here. As explained in the accompanying amicus brief, municipal jurisdiction over crimes by Indians on the Nations' Reservations subjects reservation Indians to a criminal justice system separate from their own, with different laws applied by different courts, in which punishment is meted out by the State or its political subdivisions. All of that diminishes the Nations' rights of self-government and the role of their own courts. Adjudication of cases involving Indians on the Reservation "by any nontribal court . . . infringes upon tribal law-making

3

authority," *see Iowa Mut. Ins. Co. v LaPlante*, 480 U.S. 9, 15-16 (1987), and "infringe[s] on the right of the Indians to govern themselves," *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978) (quoting *Williams v. Lee*, 358 U.S. 217, 223 (1959)). The Nations therefore have an interest in cases in which an Indian on the Reservation is subjected to a nontribal court's authority.

The Defendant Municipalities' argument in their motions to dismiss, ECF Nos. 27, 87, that Section 14 of the Curtis Act is still in effect and allows them to exercise authority over Indians in Indian country necessarily implicates that interest. Adjudication of that question in this case would affect the Nations' interests in this and other cases involving municipal authority claimed under Section 14. First, the resolution of the municipalities' Section 14 arguments by this Court will assist in bringing substantial clarity to a burgeoning dispute which will otherwise generate additional citations and arrests of Indians in Indian country. Multiple cases involving the Nations' citizens are currently pending in state and federal courts in which municipalities claim authority over Indians in Indian country. *See, e.g.*, *Hooper v. City of Tulsa*, No. 22-5034 (10th Cir. filed May 3, 2022); *Taylor v. City of Tulsa*, No. C-2021-1429 (Okla. Crim. App. filed Dec. 10, 2021)[2]; *Taylor v. City of Tulsa*, No. C-2021-1430 (Okla. Crim. App. filed Dec. 10, 2021)[3]; *City of Tulsa v. Stitt*, No. 7569655 (Tulsa Mun. Ct. not guilty plea entered Oct. 8, 2021). Dozens of other municipalities have asserted authority over Indians in Indian country in other cases. *See* Resp. of Municipalities to Pet. in Error, Ex. A, *Nicholson v. Stitt*, 2022 OK 35, 508 P.3d 442 (No. 119270)[4]; City of Broken Arrow's Resp. to Pet. in Error, Ex. "A", *Nicholson v. Stitt*, 2022 OK 35, 508 P.3d

---

[2]  https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=C-2021-1429&cmid=131953.

[3]  https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=C-2021-1430&cmid=131954.

[4]  https://www.oscn.net/applications/oscn/getimage.tif?submitted=true&casemasterid=129399&db=Appellate&barcode=1048391057.

442 (No. 119270).[5] And other municipalities on the Nations' reservations are now relying on Section 14 of the Curtis Act to cite Indians within their borders, creating additional cases.

Second, the Nations have "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *JPMorgan Chase Bank*, 2008 WL 73233, at *1 (citation omitted). The Nations' understanding of Section 14 of the Curtis Act relies on their Treaty relations with the United States and their relations with non-Indians both before and after statehood, which are not shared by the existing parties. The Nations govern Reservations in Oklahoma under treaties by which they ceded their ancestral homelands in exchange for Reservations where they would exercise self-government free from state or territorial interference. Treaty of Dancing Rabbit Creek, art. IV, Sept. 27, 1830, 7 Stat. 333 (Choctaw Nation); Treaty of Doaksville, art. 1, Jan. 17, 1837, 11 Stat. 573 (Chickasaw Nation); Treaty of New Echota, art. 5, Dec. 29, 1835, 7 Stat. 478 (Cherokee Nation); Treaty of Cusseta, art. 14, Mar. 24, 1832, 7 Stat. 366) (Muscogee (Creek) Nation); 1856 Treaty of Washington with the Creek and Seminole, arts. 3-4, Aug. 7, 1856, 11 Stat. 699 (incorporating Treaty of Cusseta) (Seminole Nation); Treaty with the Quapaw, art. 2, May 13, 1833, 7 Stat. 424 (Quapaw Nation). But during the allotment era, the Nations were coerced into agreeing to allotment through the imposition of laws, including the Curtis Act, which undermined the Nations' ability to govern their Reservations. Soon thereafter, they endured the impacts of the transition from the Indian Territory to the State of Oklahoma. But the Nations survived, and when the Supreme Court and Oklahoma Court of Criminal Appeals acknowledged the continued existence of their Reservations,[6] they acted swiftly to implement

---

[5] https://www.oscn.net/applications/oscn/getimage.tif?submitted=true&casemasterid=129399&db=Appellate&barcode=1048387628.

[6] *See McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) (Muscogee (Creek) Reservation); *Sizemore v. State*, 2021 OK CR 6, ¶¶ 10-16, 485 P.3d 867, 869-71 (Choctaw Reservation), *cert. denied*, 142

those rulings, entering into hundreds of jurisdiction-sharing agreements that depend on proper understanding and respect for the allocation of criminal jurisdiction on the Reservations between tribal, state, and federal authorities. This experience has afforded the Nations unique insight into the meaning and effect of Section 14 of the Curtis Act.

The Nations' arguments also do not simply "duplicate" arguments already made. Their arguments explaining why Section 14 of the Curtis Act has been abrogated have not yet been presented to the Court, even though they directly affect the resolution of the Section 14 issue presented in Defendant Municipalities' pending motions to dismiss. The Nations also provide relevant information, not yet briefed to the Court, about the histories of Defendant Municipalities and their recent cooperative efforts to ensure law enforcement with the Cherokee Nation. This includes the fact that ten of the Defendant Municipalities have signed memorandums with the Cherokee Nation, in which those Defendant Municipalities expressly agree that "the State of Oklahoma, and the municipalities therein do not have jurisdiction over crimes occurring on the Cherokee Reservation involving Indian defendants and/or victims." *Amicus* Br. at 7 & n.8. Notably, all ten signed those memorandums *after* filing their motion to dismiss arguing that they had jurisdiction under the Curtis Act. *See* ECF Nos. 27, 87.

Additionally, the Nations explain why the Defendant Municipalities' notices of supplemental authority, citing Chief Judge Johnson's decision in *Hooper*, *see* ECF Nos. 132, 133, give no reason to credit Defendant Municipalities' argument that Section 14 is still in effect.

---

S. Ct. 935 (2022); *Spears v. State*, 2021 OK CR 7, ¶¶ 10-16, 485 P.3d 873, 876-77 (Cherokee Reservation), *cert. denied*, 142 S. Ct. 934 (2022); *Grayson v. State*, 2021 OK CR 8, ¶¶ 7-10, 485 P.3d 250, 252-54 (Seminole Reservation), *cert. denied*, 142 S. Ct. 934 (2022); *Bosse v. State*, 2021 OK CR 30, ¶ 12, 499 P.3d 771, 774 (Chickasaw Reservation), *cert. denied*, 142 S. Ct. 1136 (2022); *State v. Lawhorn*, 2021 OK CR 37, ¶¶ 5-8, 499 P.3d 777, 778-79 (Quapaw Reservation).

Plaintiffs did not respond to those notices of supplemental authority, and so these arguments too are not duplicative and give the Court new and helpful information.

For all these reasons, the Nations' brief is relevant to the issues currently before the Court and provides information which the Court can and should consider to resolve the Defendant Municipalities' pending motions. *See Warnick v. Cooley*, 895 F.3d 746, 754 n.6 (10th Cir. 2018) (on a Rule 12(b)(6) motion, court may consider "matters of which a court may take judicial notice" (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007))); *Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 278 F. Supp. 3d 1245, 1259 (D.N.M. 2017) (a court is permitted to take notice of "facts which are a matter of public record" (quoting *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001))).

Moreover, the municipalities' arguments that Section 14 of the Curtis Act gives them jurisdiction over Indians on the Reservation, if accepted, would not only impact tribal sovereignty but create a novel, far-reaching municipal authority over Indians in Indian country that exists nowhere else in the country, not even on the other half of the State of Oklahoma. Reviewing the Nation's arguments will therefore allow the Court to "consider all the information it can to better make an informed decision." *N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 340 F. Supp. 3d 1112, 1180 (D.N.M. 2018) (Browning, J.). It will be "hard for the Court to determine the consequences" of ruling on Section 14 without hearing from the tribes that it will directly affect. *Id.* The Nations' amicus briefing is relevant for that further reason.

Counsel for most of the Defendant Municipalities—but not counsel for Owasso—have informed counsel for the Nations that they will oppose the Nations' motion for leave because, in their view, amicus participation by the Nations on the Curtis Act is untimely. The granting of this

motion is well within this Court's discretion and is fully warranted because the brief would be useful to the Court. *See CARE*, 54 F. Supp. 2d at 975-76. This motion is also timely. The clerk reassigned this case from Judge Dowdell two months ago. ECF No. 138. A motion for leave to file an amicus brief may be timely made even when filed three months after a motion comes before a judge. *See N.M. Health Connections*, 340 F. Supp. 3d at 1147, 1186 (granting motion for leave to file amici statement over party's objection that leave was sought three months after the original motion at issue was filed). Additionally, Defendant Municipalities renewed their Section 14 arguments after briefing by filing notices of supplemental authority, *see* ECF Nos. 132, 133, relying on Chief Judge Johnson's decision in *Hooper v. City of Tulsa*. Plaintiffs never responded to those notices, and the persuasiveness of the reasoning in *Hooper* has not been the subject of prior motion practice. Finally, the Northern District of Oklahoma's local rules provide that motions may be filed up to fourteen days before the date a case is set for trial, *see* Local Rule 7-1(*i*), and no trial has been set in this case.

The Nations also emphasize that granting this motion will not unduly prejudice Defendants. The effect on Defendant Municipalities is marginal. Although resolution of the Curtis Act Section 14 argument could have a dramatic effect on tribal sovereignty, it is a small part of the pending motions in this case, as revealed by Defendant Municipalities' own litigation conduct. Defendant Municipalities have made many arguments for dismissal apart from their Curtis Act Section 14 argument, *see* ECF No. 27 at 6-18; ECF No. 87 at 3-12, 14-16, including jurisdictional and standing arguments that, if successful, would dispose of the case regardless of the Court's consideration of the merits, *see* ECF No. 27 at 16-18; ECF No. 87 at 3-10. In total, Defendant Municipalities' briefing on Section 14 took up less than five pages of their opening briefs—and Defendant Owasso's briefing on this issue was largely duplicative of the other Defendant

Municipalities, *compare* ECF No. 27 at 4-6, *with* ECF No. 87 at 12-14—and less than five pages of reply briefing, *see* ECF No. 86 at 1-4; ECF No. 95 at 8-10.  Defendant Municipalities may argue that the Court's consideration of the Nations' amicus brief could delay resolution of their motion.  But that provides no reason to deny this motion because, even if delay did result, that would only perpetuate the *status quo* of these class action claims for refunds.  That is favorable to the Defendants, because they do not have to pay the claims before judgment is rendered against them.

The Defendants that are not municipalities[7] are also not prejudiced because this amicus brief does not affect any of their legal interests.  Those other Defendants have not raised Section 14 of the Curtis Act in their motions to dismiss at all, *see* ECF Nos. 18, 24, 70-72, and so the Court's consideration of the Nations' arguments on why Section 14 was repealed will have no effect on the likelihood of success of their motions, and the filing of the Nation's proposed amicus brief will require no further action on their part in this proceeding.  For the same reason, those defendants lack standing to object to the Nations' motion for leave, and so any views they have on whether this motion should be denied should not bar granting of the motion.  *See Wood v. Millar*, No. CV 13-0923 RB/CG, 2015 WL 12661926, at *4 (D.N.M. Feb. 19, 2015) (finding defendants had standing to oppose a motion for summary judgment by co-defendants "if they could be aggrieved by the outcome of the decision" on the motion); *Trantham v. Super T. Transp., Inc.*, 311 F. Supp. 3d 1247, 1251 (D. Colo. 2018) (same).

For all of these reasons, the Nations' proposed amicus brief would be "useful" to the Court and "necessary to the administration of justice."  It will assist the Court in determining the scope

---

[7] Specifically, the state District Courts of Nowata County, Washington County, Delaware County, Craig County, Mayes County, and Rogers County, District Attorneys Kevin Buchanan, Kenny Wright, Matt Ballard, and Steve Kunzweiler, and Court Clerks April Frauenberger, Jill Spitzer, Caroline Weaver, Deborah Mason, Jenifer Clinton (substituted for Laura Wade), Cathi Edwards, and Don Newberry.

of criminal jurisdiction over cases arising in Oklahoma, which is a critical component of the "administration of justice" in the State. And granting leave to file will not negatively affect the adjudication of the case or the Defendants' interests.

## CONCLUSION

For the foregoing reasons, the Nations' Motion for Leave to File should be granted and the attached proposed amicus brief should be docketed.

Dated: July 15, 2022

Respectfully submitted,

/s/ Frank S. Holleman
Frank S. Holleman
SONOSKY, CHAMBERS, SACHSE,
   ENDRESON & PERRY, LLP
145 Willow St., Suite 200
Bonita, CA 91902
Tel: 619-267-1306
E-mail: fholleman@sonosky.com

Douglas B. L. Endreson
SONOSKY, CHAMBERS, SACHSE,
   ENDRESON & PERRY, LLP
1425 K St. NW, Suite 600
Washington, DC 20005
Tel: 202-682-0240
E-mail: dendreso@sonosky.com

*Counsel for Amici Cherokee Nation, Chickasaw Nation, and Choctaw Nation of Oklahoma*

Sara Hill
*Attorney General*
Chrissi Nimmo
*Deputy Attorney General*
CHEROKEE NATION
P.O. Box 948
Tahlequah, OK 74465
Tel: 918-458-6998
E-mail: sara-hill@cherokee.org
            chrissi-nimmo@cherokee.org

*Counsel for Amicus Curiae the Cherokee Nation*

*Additional Counsel on Following Pages*

Stephen H. Greetham
*Senior Counsel*
CHICKASAW NATION
Office of Senior Counsel
4001 N. Lincoln Blvd.
Oklahoma City, OK 73105
Tel: 580-272-5236
E-mail: stephen.greetham@chickasaw.net

*Counsel for Amicus Curiae the Chickasaw Nation*

Brian Danker
*Senior Executive Officer*
DIVISION OF LEGAL & COMPLIANCE
CHOCTAW NATION OF OKLAHOMA
1802 Chukka Hina Dr.
Durant, OK 74701
Tel: 580-642-7423
E-mail: bdanker@choctawnation.com

*Counsel for Amicus Curiae the Choctaw Nation of Oklahoma*

Geri Wisner
*Attorney General*
Kevin W. Dellinger
*Assistant Attorney General*
MUSCOGEE (CREEK) NATION
P.O. Box 580
Okmulgee, OK 74447
Tel: 918-295-9270
Email: gwisner@mcnag.com
           kdellinger@mcnag.com

*Counsel for Amicus Curiae the Muscogee (Creek) Nation*

Robert H. Henry
ROBERT H. HENRY LAW FIRM
512 N. Broadway Ave, Suite 230
Oklahoma City, OK 73102
Tel: 405-516-7824
Email: rh@rhenrylaw.com

*Counsel for Amicus Curiae the Quapaw Nation*

>
> Valerie Devol
> *Attorney General*
> Garrett A. Eller
> *Assistant Attorney General*
> DEVOL & ASSOCIATES
> 15205 Traditions Lake Parkway
> Edmond, OK 73103
> Tel: 405-225-2300
> E-mail: vdevol@devollaw.com
>              geller@devollaw.com
>
> *Counsel for Amicus Curiae the Seminole Nation*
>   *of Oklahoma*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022, I electronically filed the above and foregoing document and attachments with the Clerk of Court via the ECF System for filing.

*/s/ Frank S. Holleman*
Frank S. Holleman